Present:  All the Justices

COMMONWEALTH OF VIRGINIA
                                          OPINION BY
v.  Record No. 050395        JUSTICE LAWRENCE L. KOONTZ, JR.
                                        January 13, 2006
REBECCA SCARLETT CARY


               FROM THE COURT OF APPEALS OF VIRGINIA


     In an unpublished opinion, the Court of Appeals of Virginia

vacated Rebecca Scarlett Cary's convictions in a jury trial for

the first-degree murder of Mark Beekman, Code § 18.2-32, and the

use of a firearm in the commission of that crime, Code § 18.2-

53.1.  The Court of Appeals reversed the convictions on the

ground that the trial court erred in excluding evidence of

Beekman's prior threats and acts of violence against Cary and in

failing to grant her proffered jury instructions on self-

defense, right-to-arm, and voluntary manslaughter based upon a

"heat of passion" theory.  Cary v. Commonwealth, Record No.

2031-03-1, slip op. at 1-2 (December 21, 2004).  We awarded the

Commonwealth an appeal from the judgment of the Court of Appeals

pursuant to Code §§ 17.1-411 and 19.2-317(C).[1]

_____

     [1] The Court of Appeals held, among other things, that the
evidence was sufficient to support Cary's convictions,
necessitating a remand for a new trial.  Cary did not assign
cross-error to this aspect of the judgment of the Court of
Appeals.  Accordingly, this issue is not before us in this
appeal.

BACKGROUND

Because the principal issue we consider in this appeal is whether the trial court erred in refusing to grant a proper instruction of law proffered by the accused, we view the facts relevant to the determination of that issue in the light most favorable to Cary. Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001); see also Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002); Commonwealth v. Alexander, 260 Va. 238, 240, 531 S.E.2d 567, 568 (2000). When so viewed, the evidence at trial showed that Cary and Beekman were involved in a tumultuous relationship for more than 15 years during which time Beekman fathered three of Cary's four children. Although the two had cohabited in the past, they were not living together in 2002. They habitually argued violently regarding Beekman's failure to provide child support for his children.

On May 23, 2002, Cary purchased a handgun "to protect me and my children and our home" because she lived in a "bad neighborhood." In August 2002, Cary allegedly told Beekman's sister that she had purchased the handgun and threatened to kill Beekman because he continued to fail to provide child support. Cary allegedly made a similar statement to Tracy Tabron the day before Beekman was killed. Cary denied making these statements.

On the evening of September 6, 2002, Beekman went to Cary's apartment in the City of Norfolk. Cary detected the odor of

2

alcohol on Beekman's person and knew from past experience that Beekman became violent when intoxicated.  Post-mortem tests subsequently confirmed that Beekman had a highly-elevated blood alcohol level and also that he had recently used cocaine.  The couple immediately began to quarrel over Beekman's failure to provide Cary with child support, and Beekman called Cary vulgar names and attacked her, grabbing her by the hair and hitting her in the "face and sides."  Beekman refused to leave the apartment despite Cary's request that he do so.

Cary testified that when Beekman went to use the bathroom in the apartment, she decided to retrieve the handgun from where she kept it, but found that Darron, her teenage son, had already done so.  Cary took the handgun from Darron and removed its ammunition clip, intending to use the apparently unloaded weapon to frighten Beekman into leaving the apartment.

When Beekman came out of the bathroom, Cary was sitting on a couch in the living room.  Beekman again refused to leave the home and "was still verbally assaulting" Cary, threatening that he would "smack" her, "'F' [her] up," and "break [her] up."  As Beekman "was getting ready to come into the living room," Cary pointed the handgun at Beekman, and it discharged.  The bullet struck Beekman in the chest.  Cary could not "remember doing anything [to make the handgun] go off" and "believe[d] it was on

3

safety" and unloaded. Cary subsequently testified that she thought Beekman intended to resume his physical assault on her.

Cary instructed her son to call 911 and proceeded to apply pressure to the wound in Beekman's chest. Cary pulled Beekman's body outside of the home, later explaining that she did so because "the ambulance could get to him a whole lot faster . . . instead of them having to come all through the house." Emergency medical technicians arrived and attempted to revive Beekman, but were unsuccessful.

When police arrived following the shooting, Cary first claimed that an unknown assailant had shot Beekman outside the home and that Beekman had come to the home's door "holding his chest and gasping for air." Cary repeated versions of this fabrication to the police several times that night.

When the police subsequently interviewed Cary two days after the shooting, she claimed to be unable to remember what had happened but that her memory "was starting to come back." However, she denied having a handgun in the home and when asked if she had shot Beekman, Cary responded, "I don't think so." As the interview progressed, Cary ultimately admitted to police that she had shot Beekman, but maintained that she had only intended to frighten him into leaving the home and that the handgun had discharged accidentally. Cary also told police that

4

after the shooting, she gave the handgun to her son to give to his uncle, who disposed of it. The handgun was never recovered.

On December 4, 2002, a grand jury indicted Cary for the first-degree murder of Beekman and use of a firearm in the commission of a felony. On April 7, 2003, a jury trial commenced in the Circuit Court of the City of Norfolk (trial court) with the Commonwealth presenting evidence in accord with the above-recited facts.

Relevant to the issues raised in this appeal, during her direct testimony in her defense Cary sought to introduce evidence of Beekman's prior threats and acts of violence against her. The Commonwealth objected to the introduction of such evidence, contending that "a defendant cannot introduce evidence of a victim's reputation for violence or evidence of specific facts of violence unless the defendant first adduces evidence of self-defense." The Commonwealth asserted that because Cary was claiming the shooting occurred accidentally, she could not also claim self-defense. The Commonwealth asserted further that, in any case, there had been no evidence of any overt act by Beekman at the time of the shooting that would have placed Cary in reasonable fear for her life or safety. The Commonwealth contended that, when Beekman went to the bathroom, he had effectively ended his assault on Cary and did nothing afterwards to place her in fear.

Cary responded that she was entitled to assert concurrent claims of accident and self-defense and that these claims were not mutually exclusive. Cary contended that the evidence did show an overt act sufficient to put Cary in fear for her life or safety. Cary maintained that Beekman's uninvited presence in the home, his verbal and physical abuse of her, and his refusal to leave after repeated requests, were part of a pattern of behavior that she could have reasonably believed would continue when Beekman returned from the bathroom, given his continued verbal abuse and refusal to leave the home. Moreover, Cary maintained that the space of time between the actual assault on her and the shooting was sufficient to permit the jury to find that Cary remained in imminent danger. At this point in the proceeding, however, Cary did not assert the argument that Beekman was actually advancing toward her when the gun discharged.

Before ruling on the admissibility of the anticipated evidence of Beekman's prior acts of violence, the trial court asked Cary's counsel if she had "presented all the evidence that . . . supports the establishment of [a] prima facie case [for] self-defense . . . including overt acts in support of that particular defense." Counsel responded that the series of actions by Beekman that preceded the shooting constituted the overt act necessary to establish an apprehension of imminent

6

harm and that it was for the jury to determine whether Cary's fear was reasonable.

The trial court then ruled that Beekman's assault on Cary prior to the shooting was not an overt act sufficient to support a claim of self-defense, agreeing with the Commonwealth that when Beekman stopped the attack to go to the bathroom, Cary was no longer in imminent danger. The trial court reasoned that Cary's presence of mind in retrieving the handgun and of removing the ammunition clip showed that she was no longer in fear. The trial court further reasoned that at the time of the shooting, Cary did not claim that she was "using that weapon to repel any act or prevent any act by [Beekman] at that moment in time." Accordingly, the trial court ruled that Cary would not be entitled to present evidence of Beekman's prior threats and acts of violence against her and that she could not assert a defense of self-defense.

After the trial court made this ruling, Cary continued her testimony. During redirect examination, Cary testified that immediately prior to shooting Beekman, "[h]e was coming back. I am not sure whether he was walking or running." After this evidence was received, Cary did not request the trial court to reconsider its prior ruling that there was no evidence of an overt act by Beekman after he returned from the bathroom that

7

would have caused Cary to be in reasonable fear for her life or safety.

Outside the presence of the jury, however, the trial court permitted Cary to proffer evidence of Beekman's prior threats and acts of violence against her. That evidence, presented by Cary and her son, established that Beekman had raped Cary when they first met and that he had physically abused her and her children throughout their relationship. On one occasion, Beekman cut her face with a glass, allegedly resulting in "75 stitches," and on another he broke her jaw. Beekman was particularly prone to violence when he was intoxicated.

Cary proffered instructions on the defenses of self-defense and heat of passion and further requested that the jury be instructed on the right-to-arm. Cary also sought an instruction on the lesser-included offense of voluntary manslaughter. The trial court refused these instructions.

The jury convicted Cary of both charged offenses and sentenced her to 20 years imprisonment for the first-degree murder of Beekman and three years imprisonment for the firearm offense. In an order dated September 17, 2003, the trial court imposed sentence in accord with the jury's verdicts.

Cary noted an appeal in the trial court and filed a petition for appeal in the Court of Appeals. In opposing Cary's petition, relevant to her claim that the trial court erred in

not instructing the jury on self-defense, the Commonwealth did not assert a procedural bar with respect to this issue. Instead, the Commonwealth argued that the trial court correctly found that the record did not support a finding that Cary was acting in self-defense.

After Cary's petition for appeal was granted in part by the Court of Appeals, the Commonwealth raised for the first time the issue whether Cary's assertion that the trial court erred in not instructing the jury on self-defense was procedurally barred. The Commonwealth asserted that Cary had not expressly "argued to the trial court that Beekman was advancing on Cary at the time she shot him" when the self-defense instruction was proffered. The Commonwealth further maintained that Cary's assertion that she should have been permitted to introduce evidence of Beekman's prior threats and acts of violence against her was also procedurally barred because at the time she sought to introduce such evidence she had not yet testified that Beekman was either "walking or running" toward her when the gun discharged and did not reassert the issue once that evidence was presented.

In reversing Cary's convictions, the Court of Appeals did not expressly address the Commonwealth's assertion of a procedural bar. However, the Court of Appeals expressly found that with regard to Beekman's actions immediately prior to the

9

shooting, Cary "testified without equivocation that 'he was coming back' and she was 'not sure whether he was walking or running.' " Cary, Record No. 2031-03-1, slip op. at 7-8. Accordingly, the Court of Appeals held that "[t]his evidence, viewed in the light most favorable to [Cary], established an overt act of sufficient imminence to entitle her to a self-defense instruction because it supported a finding that the victim, although still over ten feet away, was advancing toward her in a threatening fashion to resume the attack he had stopped only moments earlier." Id. at 8.

In reaching this conclusion, the Court of Appeals distinguished Sands, the principal case relied upon by the Commonwealth, stating that facts in the present case stood "in marked contrast to those in Sands, in which the victim had at least temporarily ceased his repeated attacks on the defendant and was watching television in another room when she retrieved a gun and 'shot him five times while he reclined on the bed.' " Id. (quoting Sands, 262 Va. at 730, 553 S.E.2d at 737). The Court of Appeals further held that although Beekman, like the victim in Sands, "appeared [to be] unarmed [that fact] does not defeat the threat. The victim had beaten [Cary] with his fists on numerous prior occasions and, on one occasion, broke a glass in her face. [Cary] testified that, prior to the night on which

10

she shot the victim, he had beaten her as recently as the previous weekend." Id.

The Court of Appeals further noted that Cary's claim that the killing "was an accident does not prevent her from asserting a legal claim of self-defense." Id. (citing Valentine v. Commonwealth, 187 Va. 946, 953, 48 S.E.2d 264, 268 (1948)); see also Jones v. Commonwealth, 196 Va. 10, 14-15, 82 S.E.2d 482, 484-85 (1954). Accordingly, the Court of Appeals held that the trial court erred in failing to instruct the jury on self-defense.[2] Cary, Record No. 2031-03-1, slip op. at 1-2.

The Court of Appeals reasoned that because the record would have supported giving an instruction on self-defense, "at least some of [Cary's] evidence about the victim's prior threats and abuse was admissible to show 'the reasonable apprehensions of [appellant] for [her] life and safety,' immediately prior to the

_____

[2] In dictum, the Court of Appeals further opined that "even if [Cary] had not been entitled to an instruction indicating that the right of self-defense fully justified her use of deadly force because the threat posed by the victim was not sufficiently imminent, she nevertheless was entitled to an instruction indicating that the right of self-defense justified her merely threatening to use such force." Cary, Record No. 2031-03-1, slip op. at 10. Cary did not proffer such an instruction and does not assert in this appeal that the trial court should have amended the instruction she proffered to reflect her right to threaten the use of force. Accordingly, we express no opinion on this aspect of the Court of Appeals' judgment.

11

shooting." Id., slip op. at 6 (quoting Canipe v. Commonwealth, 25 Va. App. 629, 640-41, 491 S.E.2d 747, 752 (1997)); see also Randolph v. Commonwealth, 190 Va. 256, 265, 56 S.E.2d 226, 230 (1949). The Court did not address the Commonwealth's assertion that at the time she first sought to introduce the evidence of Beekman's prior threats and acts of violence she had not yet introduced evidence that Beekman was advancing on her when the gun discharged.

The Court of Appeals further held that because Cary's claim of right-to-arm would have been supported by the evidence of Beekman's prior threats and acts of violence and, thus, would potentially rebut the Commonwealth's assertion that her purchase of the handgun showed premeditation, the trial court erred in refusing Cary's instruction on right-to-arm. Cary, Record No. 2031-03-1, slip op. at 10-13. Addressing Cary's assertion that she was entitled to a heat of passion instruction and further that this would have warranted the trial court instructing the jury on the lesser-included offense of voluntary manslaughter, the Court of Appeals held that Cary's "testimony of the victim's prior conduct that evening and her testimony that he was coming back into the living room, where she feared he would assault her further and perhaps kill her, created a jury issue on whether there had been a cooling off period sufficient to preclude a finding that [Cary] acted in the heat of passion." Id. at 14.

12

The Court of Appeals recognized that "[w]hen a jury is instructed on first-degree murder and second-degree murder and convicts the defendant of first-degree murder, such a verdict 'compels the conclusion that [the jury] would never have reached a voluntary manslaughter verdict.' " Id. (quoting Turner v. Commonwealth, 23 Va. App. 270, 277, 476 S.E.2d 504, 507 (1996), aff'd, 255 Va. 1, 492 S.E.2d 447 (1997)). However, the Court of Appeals concluded that the trial court's failure to instruct the jury on self-defense and right-to-arm might have impacted the jury's consideration of the evidence in favor of finding first-degree murder and, thus, it was not clear that a properly instructed jury would not have considered the lesser offense of voluntary manslaughter in the heat of passion. Id. at 14-15. Accordingly, the Court of Appeals held that the trial court erred in failing to instruct the jury on that offense. Id. at 1-2.

Although the Court of Appeals vacated Cary's convictions, it nonetheless found the evidence sufficient to sustain those convictions and remanded the case for a new trial. Id. at 17. The Commonwealth filed a petition for rehearing en banc, asserting, among other arguments, that the Court had erred in failing to address the assertion of a procedural bar to the self-defense issue. By order entered February 8, 2005, the Court of Appeals refused the petition for rehearing en banc.

13

DISCUSSION

Before addressing the merits of the substantive issues raised in this appeal, we first address the Commonwealth's second assignment of error that "[t]he Court of Appeals erred in ignoring the fact that Cary's argument on appeal on the issue of self-defense was procedurally defaulted." In briefing this assignment of error, the Commonwealth argued this issue in conjunction with its first assignment of error asserting that the Court of Appeals erred in rejecting the trial court's decision to exclude evidence of Beekman's prior threats and acts of violence against Cary. The Commonwealth contends that the procedural default applies both to Cary's assertion that the trial court erred in denying her an instruction on self-defense and her assertion that the trial court erred in refusing to admit that evidence. However, because the Commonwealth's assignment of error asserts only that the default related to "the issue of self-defense," we will confine our consideration of the alleged procedural default to the failure to grant a self-defense instruction.

The Commonwealth maintains that in offering the self-defense instruction, Cary "never articulated for the court what overt act the victim had committed." Thus, the Commonwealth contends that Cary's argument made in the Court of Appeals, and reiterated here, that the evidence supports, directly or by

inference, that Beekman was advancing upon her at the time of the killing, is procedurally barred. We disagree.

When a trial court refuses to give an instruction proffered by a party that is a correct statement of law and which is supported by adequate evidence in the record, this action, without more, is sufficient to preserve for appeal the issue of whether the trial court erred in refusing the instruction. Cf. Atkins v. Commonwealth, 257 Va. 160, 178 n.9, 510 S.E.2d 445, 456 n.9 (1999) (failure to raise "a precise objection to the Commonwealth's proposed verdict form" did not bar consideration of issue on appeal when defendant had proffered a correct verdict form); see also Pilot Life Insurance Co. v. Karcher, 217 Va. 497, 498, 229 S.E.2d 884, 885 (1976). This is so because when an instruction is proffered on "a principle of law [that] is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991). Indeed, in Jimenez, we held the failure of the trial court to properly instruct the jury was so serious as to warrant invoking the "ends of justice" exception of Rules 5A:18 and 5:25 despite the defendant's failure to object to the improper instruction actually given. Id. at 251, 402 S.E.2d at 681-82.

Thus, we hold that Cary's proffer of a correct instruction on the defense of self-defense is sufficient to preserve for

15

appeal the question whether the trial court erred in refusing that instruction. It was not necessary for Cary to expressly articulate each element necessary to her defense, because the trial court heard the evidence and could evaluate its application to the proffered instruction, which unquestionably was vital to Cary's case.

We now consider whether the Court of Appeals correctly concluded that the evidence was sufficient to warrant the jury being instructed on the defense of self-defense. The Commonwealth contends that in determining that the trial court erred in failing to grant Cary's self-defense instruction, "[t]he Court of Appeals . . . stitch[ed] together unconnected threads from various portions of Cary's testimony to create the impression of an overt act." The Commonwealth further contends that although these "unconnected threads" of evidence were before the trial court when it rejected Cary's proffered self-defense instruction, the evidence was not unequivocal, and when viewed in the context of Cary's full testimony established nothing more than that Beekman was returning to the living room from the bathroom, and not that he was advancing upon Cary in a threatening manner.

Cary responds that the Commonwealth's argument fails to apply the proper standard for reviewing the refusal of a correct instruction of law. Because that standard requires that the

16

evidence be viewed in the light favorable to Cary, as the proponent of the instruction, Cary contends that the Court of Appeals properly focused its attention on those elements of her testimony that the jury could have found supported her claim of self-defense.

Both parties rely extensively upon the rationale underlying the holding in Sands to support their respective positions. Certainly, that case provides the most recent, succinct, and comprehensive survey of the law of self-defense as it has developed in this Commonwealth:

> The principles governing a plea of self-defense are well-established. Self-defense is an affirmative defense to a charge of murder, and in making such a plea, a "defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors." McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978). The "bare fear" of serious bodily injury, or even death, however well-grounded, will not justify the taking of human life. Stoneman v. Commonwealth, 66 Va. 887, 900 (1874). "There must [also] be some overt act indicative of imminent danger at the time." Vlastaris v. Commonwealth, 164 Va. 647, 652, 178 S.E. 775, 776 (1935). See also Yarborough v. Commonwealth, 217 Va. 971, 975, 234 S.E.2d 286, 290 (1977); Mercer v. Commonwealth, 150 Va. 588, 597, 142 S.E. 369, 371 (1928). In other words, a defendant "must wait till some overt act is done[,] . . . till the danger becomes imminent." Vlastaris, 164 Va. at 652, 178 S.E. at 777. In the context of a self-defense plea, "imminent danger" is defined as "an immediate, real threat to one's safety . . . ." Black's Law Dictionary 399 (7th ed. 1999). "There must be . . . some act menacing present peril . . . [and] the act . . . must be of such a character as to afford a reasonable ground for believing there is a design

17

. . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution." Byrd v. Commonwealth, 89 Va. 536, 539, 16 S.E. 727, 729 (1893).

Sands, 262 Va. at 729, 553 S.E.2d at 736.

Moreover, in Sands, this Court reiterated the well-established rule that, as with any proffered instruction that is otherwise a correct statement of law, an instruction on the defense of self-defense "is proper only if supported by more than a scintilla of evidence" and "it is not error to refuse an instruction when there is no evidence to support it." Id. (emphasis added).

Except that the victim and the defendant in Sands were married, the underlying history of their relationship is materially indistinguishable from that of the tumultuous relationship between Beekman and Cary. In both instances, the couples had a long history of acts of violence committed by the male upon the female that were frequently occasioned by the excessive use by the male of alcohol and illicit drugs. In both instances, the male had made repeated threats to kill the female, and the female had a subjective belief that the male would eventually carry out that threat. See id. at 725-27, 553 S.E.2d at 734-35.

In Sands, on the evening of the killing, the victim had savagely beaten the defendant. However, the evidence showed

18

that subsequent to that assault, the defendant's sister-in-law had arrived at the couple's home and offered assistance to the defendant.  Id. at 727-28, 553 S.E.2d at 735.  Meanwhile, the victim "was lying in bed, watching television."  Id. at 728, 553 S.E.2d at 735.  The defendant, who was in the bathroom with her sister-in-law, suddenly became frantic, went to the kitchen where she retrieved a gun, and then went to the bedroom.  The victim merely asked the defendant what she was "doing," and then the defendant shot the victim five times, killing him.  Id. at 728, 533 S.E.2d at 735-36.

This Court concluded that there was no evidence to support the defendant's proffered self-defense instruction because the record did not "reveal any overt act by her husband that presented an imminent danger at the time of the shooting."  Id. at 730, 533 S.E.2d at 737.  This Court specifically noted that while less than an hour had elapsed between the victim ending his assault on the defendant and the shooting, id. at 730 n.2, 553 S.E.2d at 737 n.2, "sufficient time elapsed for [the sister-in-law] to arrive at the couple's home, and for the defendant to view the extent of her injuries while in the bathroom with [the sister-in-law], walk from the bathroom to the living room door, turn around and proceed back into the kitchen, retrieve a gun from a cabinet, and walk back into the bedroom where her husband

19

was reclining on the bed, watching television." Id. at 730, 553 S.E.2d at 737.

In the present case, when considered in the light most favorable to Cary, the evidence is sufficient to establish Cary's genuine fear for her life in view of the atrocities inflicted upon her by Beekman. Thus, as before, we are concerned only with whether the record would provide the trier-of-fact with more than a scintilla of evidence to support a finding that there was an overt act of sufficient imminence on the part of Beekman that would warrant Cary to act upon that genuine fear to use deadly force in self-defense.

The Commonwealth asserts, and we agree, that Cary cannot rely solely on the initial assault upon her as the "overt act" that occasioned her resort to self-defense. However, contrary to the apparent view of the Commonwealth, neither may we disregard that evidence entirely, merely because "Beekman retired to the bathroom" for approximately five minutes. Rather, we consider Beekman's subsequent actions in light of that assault.

Contrary to the assertion made by the Commonwealth, the evidence in this case, again viewed in the light most favorable to Cary, does not "simply indicate[] that Beekman walked back into the living room after using the bathroom." Nor is it necessary for us to "stitch together unconnected threads from

20

various portions of Cary's testimony to create the impression of an overt act."

According to Cary's testimony, Beekman did not simply emerge from the bathroom and make his way to the living room. Rather, she confronted Beekman as he returned to the living room and repeated her demand that he leave the home. Beekman refused this demand and threatened to "smack" her and commit other acts of violence upon her. It was in this context that Cary testified that Beekman was "walking or running" toward her. And that fact must be viewed in the context that Beekman's assault on Cary, which had ended only five minutes before, had been occasioned by the same demand that he leave the home, his refusal, and a vile verbal assault. When so viewed, the trier-of-fact could reasonably conclude that Beekman, although 11 to 18 feet away from Cary at the time of the shooting, was nonetheless advancing toward her with the intent to resume his physical assault upon her. Such act constituted an overt act of sufficient imminence on the part of Beekman to warrant Cary to respond in her defense. Accordingly, we hold that the Court of Appeals did not err in finding that there was sufficient evidence in the record to warrant the trial court instructing the jury on Cary's claim of self-defense and, thus, that the trial court erred in not giving the proffered self-defense instruction.

The Commonwealth also contends that even if the evidence in its entirety entitled Cary to have the jury instructed on self-defense, the Court of Appeals nonetheless erred in finding that the trial court improperly refused to admit Cary's proffered testimony concerning Beekman's prior threats and acts of violence against her.  As it did in the Court of Appeals, the Commonwealth contends that at the time Cary sought to introduce this evidence during her direct testimony, she had not yet presented the evidence she now relies upon to establish the overt act necessary for a claim of self-defense, and she did not request that the trial court revisit its decision once that evidence had been presented during her re-direct testimony.

We agree with the Commonwealth that at the time Cary sought to introduce the evidence of Beekman's prior threats and acts of violence, in response to the trial court's express inquiry, her counsel relied only on the evidence as it existed at that point in the trial as the basis for establishing a claim of self-defense.  Thus, the trial court correctly excluded the proffered evidence because at that time evidence of an overt act sufficiently imminent to support a claim of self-defense by Cary had not been presented.

However, the issue is mooted by our holding that the evidence ultimately supported the assertion of an overt act warranting a self-defense instruction.  Because the case will be

remanded and the evidence well may be presented differently upon a new trial, we will not give an advisory opinion regarding whether evidence of Beekman's prior threats and acts of violence would be admissible if proffered again.  Kanter v. Commonwealth, 171 Va. 524, 532-33, 199 S.E. 477, 481 (1938); see also Cantrell v. Crews, 259 Va. 47, 52, 523 S.E.2d 502, 504 (2000).

For the same reason, we do not consider the Commonwealth's remaining assignments of error concerning the judgments of the Court of Appeals reversing the trial court on the right-to-arm, heat of passion, and voluntary manslaughter issues.  While we do not discount the Commonwealth's assertions on these issues and recognize that they may likely recur in the event of a new trial, it is also likely that the presentation of evidence will be sufficiently different that any expression by this Court as to the correctness of the rulings of the trial court in the former trial, or of the Court of Appeals in reversing those rulings, would not be relevant and advisory only.

## CONCLUSION

For these reasons, we will affirm the judgment of the Court of Appeals vacating Cary's convictions and remanding the case to the trial court for a new trial, if the Commonwealth be so advised.

Affirmed.

23

JUSTICE AGEE, with whom JUSTICE KINSER joins, dissenting.

For the reasons stated below, I find that the Court of Appeals erred in holding that Rebecca Scarlett Cary was entitled to jury instructions on self-defense and accidental self-defense because her appellate argument of the overt act of imminent danger justifying self-defense under Commonwealth v. Sands, 262 Va. 724, 553 S.E.2d 733 (2001), is barred by Rule 5:25. On that basis, I also find the Court of Appeals erred in ruling evidence of the decedent's prior acts of violence to be admissible. Furthermore, I believe the Court of Appeals was in error to adjudge Cary entitled to jury instructions on the right to arm and voluntary manslaughter. Therefore, I respectfully dissent from the majority opinion and would reverse the judgment of the Court of Appeals.

I.   THE SELF-DEFENSE CLAIMS

The majority opinion correctly recites from our holding in Sands that in order for the affirmative defense of self-defense to apply "[t]here must [also] be some overt act indicative of imminent danger at the time" made against the defendant. Id. at 729, 553 S.E.2d at 736 (citation omitted). That overt act must be "some act menacing present peril" and "of such a character as to afford a reasonable ground for believing there is a design . . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution." Id. (citations

24

omitted).  On appeal, at least in this Court, Cary has posited the overt act justifying her claims of self-defense to be that Beekman advanced at her in the apartment in such a way as to constitute an "imminent danger" about to be carried "into immediate execution" when she shot him.  This is a position never argued in the trial court and only implied before the Court of Appeals.

The overt act of imminent danger is crucial because it is the foundation without which Cary is not entitled to a jury instruction on self-defense.  Id.; see also Mealy v. Commonwealth, 135 Va. 585, 596, 115 S.E. 528, 531 (1923). Furthermore, and just as importantly, the overt act justifying self-defense is an absolute condition precedent to Cary's claim for an instruction on accidental self-defense, see Braxton v. Commonwealth, 195 Va. 275, 277-78, 77 S.E.2d 840, 841-42 (1953) (recognizing that the defenses of accident and self-defense are ordinarily mutually exclusive, except where the accused is "lawfully acting in self-defense" because of the victim's overt act but the death is allegedly accidental, such as "where in a struggle over the possession of a weapon it was accidentally discharged"), or to the admission into evidence of the victim's character for violence or aggression.  Mealy, 135 Va. at 596, 115 S.E. at 531 ("evidence [that the decedent was a quarrelsome, dangerous and ferocious man] was not admissible . . . because

25

there was no foundation in the case for the theory of self-defense, and the dangerous character of the deceased was, therefore, not material.").  Thus, if the record fails to support Cary's claim that she argued Beekman's advance on her as the overt act justifying self-defense in the trial court, then all of her related claims of trial court error, as found by the Court of Appeals, fail.

The Commonwealth makes three assignments of error[1] to the judgment of the Court of Appeals which relate to the issue of self-defense: admission into evidence of the decedent's alleged prior violent acts, a self-defense jury instruction and an accidental self-defense jury instruction (collectively the "self-defense claims").  As noted above, without an overt act menacing present peril to the defendant, self-defense is not available as an affirmative defense and all of Cary's claims on these three issues fail.  If the trial court correctly found there was no overt act under Sands that justified the giving of

---

[1] Assignment of Error 1 alleges: "The Court of Appeals erred in holding that the record showed an overt act by the victim that required the trial court to admit certain evidence of past acts of violence by the victim and further required a self-defense instruction."

Assignment of Error 2 alleges: "The Court of Appeals erred in ignoring the fact that Cary's argument on appeal on the issue of self-defense was procedurally defaulted."

Assignment of Error 3 alleges: "The Court of Appeals erred in holding that the trial court should have granted Cary's

an instruction on self-defense, then as a matter of law, the requisite showing of a defense of self-defense could not be present to legitimize the admission of alleged prior acts of violence by the victim.  Mealy, 135 Va. at 596, 115 S.E. at 531; see also Jordan v. Commonwealth, 219 Va. 852, 855, 252 S.E.2d 323, 325 (1979); Burford v. Commonwealth, 179 Va. 752, 767, 20 S.E.2d 509, 515 (1942); Harrison v. Commonwealth, 79 Va. (4 Hans.) 374, 378-79 (1884).  Thus, all three of the foregoing issues comprising the Commonwealth's first three assignments of error rise or fall on whether the requisite overt act justifying self-defense was before the trial court.

Rule 5:25 of the Rules of the Supreme Court of Virginia states:

> Error will not be sustained to any ruling of the trial court or the commission before which the case was initially tried unless the objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.

"The purpose of Rule 5:25," as we have previously stated, "is to give the trial court an opportunity to rule on a matter with knowledge of the substance of a party's objection, in order to avoid needless mistrials, reversals, and appeals."  Morgen Indus., Inc. v. Vaughan, 252 Va. 60, 67, 471 S.E.2d 489, 493

---

instruction on accidental self-defense where there was no overt act."

(1996) (declaring an issue procedurally barred because the record showed that the proponent's arguments on appeal differed from the arguments it made to the trial court).  In addition, "Rule 5:25 exists to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials."  Fisher v. Commonwealth, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988).

### A. The Overt Act Argued in the Trial Court

Before determining that Cary had not set forth a prima facie case of self-defense and therefore could not present evidence of Beekman's prior violent acts, the trial court specifically questioned Cary's trial counsel: "[D]o you represent to the Court that you have presented all of the evidence that you claim supports the establishment of your prima facie . . . self-defense defense including overt acts in support of that particular defense . . . ?"  Counsel's response is unequivocal:

> Your Honor, I believe that with the testimony of Ms. Cary as to the actions of the victim, Mark Beekman, on the evening in question where he had proceeded to assault her, make verbal threats towards her and [by] other means terrorize her that evening, that that does constitute the overt act.  And as I had previously said, the issue of imminence, I believe, is an issue for the jury.
> The overt act in Ms. Cary's mind at the time put her or would have put her in a position to fear, as she stated, future violence against her and that at

28

> the time her son had brought the gun from the room,
> she was still under that fear.
>     <u>Although the overt act may not have coincided or
> occurred concomitantly at the exact same moment as the
> possession of the weapon</u>, it was fresh enough in her
> mind the actions that Mr. Beekman had taken against
> her as well as the verbal threats that he had made as
> to constitute an overt act for purposes [of a] self-
> defense defense.

(Emphasis added). The Court immediately asked, "So then is the answer to my question yes?" Cary's attorney replied, "Yes."

Cary's trial counsel never mentions in this direct exchange or anywhere else in the record that Beekman advancing toward Cary immediately prior to the shooting was the overt act of immediate peril creating an imminent danger to Cary that supports self-defense. Cary never made any argument regarding the self-defense or accidental self-defense instructions that differed from this argument. Indeed, counsel's statement here not only omits any contention that the decedent was moving toward Cary immediately prior to the shooting, but it actually negates that argument by admitting the alleged overt act "may not have coincided or occurred concomitantly" with the possession and firing of the gun. From this text, Cary's trial court argument of an overt act justifying self-defense does not include even a passing reference to Beekman's movement toward Cary immediately prior to the shooting. To the contrary, Cary's trial court argument is based on the totality of the decedent's prior acts both earlier that evening and on previous occasions.

29

Indeed, when defense counsel contended that Cary was entitled to instructions on self-defense and accidental self-defense, she did so because:

> while [Cary] was holding the gun in self-defense of herself, the victim returns to the room, is continuing to make threats to her which, based on her prior experience that evening, the assault coupled with the threats, she at that time believed herself to be in reasonable danger.
>     So I would submit the overt act, even though it did not occur concomitantly with the gun going off, occurred in a reasonable time which the jury could determine led Ms. Cary to believe that she was in imminent danger.

(Emphasis added).  Once again, in arguing to the trial court that a sufficient overt act existed, Cary never argued that Beekman advanced toward her immediately prior to the shooting. Instead, Cary again represented that the opposite occurred because the overt act "did not occur concomitantly with the gun going off."  (Emphasis added).

In addition to defense counsel's own statements, which contradict the argument now made on appeal, the trial court transcripts reflect several instances in which the trial court attempted to clarify Cary's position and explain the basis for its holdings.  For example, in reviewing the facts in the light most favorable to Cary on self-defense and accidental self-defense, the trial court summarized her testimony:

> [Cary] says that more conversation takes place, and then the gun goes off accidentally, clearly the gun goes off accidentally.  She does not testify, does not

30

> suggest that she was using that weapon to repel any
> act or to prevent any act by the defendant at that
> moment in time. She was simply holding a gun that she
> believed to be empty, and that it accidentally
> discharged and struck him in the chest which
> ultimately resulted in his death.
>
> . . . .
>
> There is no claim that there was some struggle, that
> he was assaulting her, that she was repelling that
> force and that in the context of that this gun
> accidentally went off.

(Emphasis added). Similarly, after hearing Cary's later proffer of testimony, the trial court stated:

> [N]otwithstanding anything that's been said at this
> stage through the proffer is that the defendant
> clearly did not set forth any overt act on [the day of
> the shooting] or any basis upon which a viable case of
> self-defense could reasonably or rationally be
> considered in this case. . . . at the time of the
> event the defendant's and her son's testimony clearly
> state that there was no act of overt threat or
> violence toward the defendant at the time.

At no time during or after these statements from the bench did Cary object to the characterization of her arguments or contend to the trial court that the decedent's movements immediately prior to the shooting established the existence of an overt act justifying self-defense. Instead, the sole basis argued to the trial court at any time was that the overt act of imminent danger to Cary was the decedent's prior physical and verbal assaults.

The arguments now made by Cary, and adopted by the Court of Appeals and the majority opinion, were simply never made at

31

trial.  For example, nothing in Cary's proffered testimony

supports the claim that the decedent committed the overt act she

now argues justifies the self-defense claims.  Her proffered

testimony focuses on the decedent's prior acts against Cary, and

date back to 1984, nearly twenty years prior to the shooting.

After detailing these prior events, Cary's trial counsel asked

Cary what she was "afraid of" when Beekman physically assaulted

her earlier on the evening of the shooting.  Cary's response

was, "I was afraid that one day he would just take me out of

this world because that almost like took me out of here being

busted in the face and the glass and near the jugular vein."

The events Cary recounts here as to what precipitated her fear

on the evening of the shooting were all events that occurred on

previous occasions.  None of the proffered testimony contends

Beekman was moving toward Cary to attack her immediately prior

to the shooting, so as to put Cary in immediate fear of an

imminent danger of bodily injury or death.[2]

---

[2] The record shows that prior to the shooting, Beekman used the bathroom, which was through the kitchen and down a hall away from the living room.  The only entry or exit from the apartment was a single door in the living room where Cary was sitting.  Thus, Beekman had to re-enter the living room where Cary was sitting at the time of the shooting in order to exit the apartment.  Beekman could not have fulfilled Cary's request to leave without re-entering the living room in order to reach the apartment's only door.

Because the record clearly shows that Cary did not argue to the trial court that the decedent's alleged movement toward her immediately prior to the shooting was the overt act that placed her in imminent danger of immediate harm, Rule 5:25 bars Cary from making this argument on appeal as an after-the-fact basis to justify the self-defense claims. Based on the record, the trial court correctly held that Cary failed to establish the existence of an overt act under Sands, and therefore no basis existed to warrant any of the self-defense claims. As such, the trial court properly denied Cary's request to introduce evidence of Beekman's past violent conduct and properly refused Cary's proposed jury instructions relating to self-defense and accidental self-defense. The Court of Appeals erred in holding to the contrary.

B. The Majority's Reliance on Jimenez v. Commonwealth

The majority opinion summarily dispenses with the Commonwealth's argument that Cary procedurally defaulted her argument as to the overt act of self-defense by citing our decision in Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991), for the first time in these proceedings. The majority does so in support of its holding that "Cary's proffer of a correct instruction on the defense of self-defense is sufficient to preserve for appeal the question whether the trial court erred in refusing that instruction." Upon review of

*Jimenez* and other decisions of this Court cited therein, I cannot agree that those decisions apply in this case.

In *Jimenez*, the defendant was indicted for a violation of Code § 18.2-200.1, which provides, in pertinent part, that a defendant may be guilty of larceny if he "obtain[s] from another an advance of money, . . . with fraudulent intent, upon a promise to perform construction" and fails either to perform the service or return the advance "within fifteen days of a request to do so sent by certified mail . . . ." *Id.* at 247, 402 S.E.2d at 679. The trial court failed to instruct the jury that a necessary element of the offense that the Commonwealth must prove is that the defendant must have received a written request. The Commonwealth provided no evidence of such a request, but the defendant failed to object to the trial court's incomplete instruction. This Court determined that the ends of justice exception to Rule 5:25 applied because the jury was not instructed as to a material element of the offense charged. *Id.* at 248, 251, 401 S.E.2d at 679, 681-82. We held that

> [t]he granted instruction omitted some essential elements of the offense. Likewise, no evidence was produced relating to those elements. [The defendant], therefore, was convicted of a non-offense.

*Id.* at 251, 401 S.E.2d at 681. In reaching our holding in *Jimenez*, we reviewed our prior decisions in *Ball v. Commonwealth*, 221 Va. 754, 273 S.E.2d 790 (1981), *Bryant v.*

34

Commonwealth, 216 Va. 390, 219 S.E.2d 669 (1975) (per curiam), and Whaley v. Commonwealth, 214 Va. 353, 200 S.E.2d 556 (1973). Like Jimenez, each of these cases was decided on facts and in a procedural posture dissimilar to the case at bar.

In Ball, the defendant was convicted on an indictment for capital murder under former Code § 18.2-31(d) (Supp. 1979): "[t]he willful, deliberate and premeditated killing of any person in the commission of robbery while armed with a deadly weapon." The evidence adduced at trial, however, showed that the defendant never consummated the robbery. Thus, the store manager was mortally wounded when he tried to wrest the gun from the defendant during the commission of an attempted robbery, not robbery as charged in the indictment. Id. at 756, 273 S.E.2d at 791. The defendant failed to object to the capital murder instruction as unsupported by the evidence, but we applied the ends of justice exception finding, as we did later in Jimenez, that the defendant in Ball had been "convicted of a crime of which under the evidence he could not properly be found guilty." Id. at 758-59, 273 S.E.2d at 793.

In Bryant, the defendant was convicted of rape and argued as his only defense, the consent of the prosecutrix. The trial court, however, refused the defendant's proffered instruction on consent as a defense and never instructed the jury that lack of consent was an element of the crime charged. Id. at 391-92, 219

35

S.E.2d at 670-71. On appeal, we noted that the evidence was by no means conclusive of the defendant's guilt, and we determined that while the "trial court [was] not required to amend or correct an erroneous instruction, . . . it [was] reversible error for the trial court to refuse a defective instruction" which "was crucial to [the defendant's] sole defense." Id. at 393, 219 S.E.2d at 671. Instead, the trial court should have "correct[ed] it and giv[en] it in the proper form" because "[a] jury should . . . [be] sufficiently informed [of the elements of a crime required for a conviction]." Id. at 393, 219 S.E.2d at 671-72.

In Whaley, the defendant was convicted of rape. 214 Va. at 354, 200 S.E.2d at 557. He offered an instruction to the trial court that included the presumption of innocence, but the trial court rejected the instruction. Id. at 355, 200 S.E.2d at 558. The jury was never instructed on the presumption of innocence. Id. Citing prior decisions of this Court, we agreed that "the accused is entitled to an instruction on the presumption of innocence, and it is reversible error for the trial court to refuse such an instruction when requested." Id. at 355-56, 200 S.E.2d at 558 (citations omitted). As such, we determined that the presumption is a "principle of law . . . materially vital to [the criminal] defendant, [and]

36

it [was] reversible error for the trial court to refuse a defective instruction instead of correcting it and giving it in the proper form." Id. at 355-56, 200 S.E.2d at 558.

The case at bar, however, bears little similarity to Jimenez or the other cases. Unlike Ball and Jimenez, the Commonwealth here met its burden of proof on all the elements of the indicted offense. The trial court instructed the jury on the necessary elements of the crime and did not permit conviction for a non-offense.

Unlike the defendants in Bryant and Whaley, Cary did not offer an incorrect instruction that the trial court had a duty to correct. Cary simply failed to argue to the trial court the necessary basis of an overt act for her self-defense claims that she later advanced for the first time on appeal. Moreover, in distinction from Jimenez and the other cited cases, Cary did not just make a different argument on appeal, but her argument at trial contradicts her appellate claim. At risk of again repeating the saga, Cary argued at trial that the overt act was the history of Beekman's prior threats and assaults, which she admitted did not occur "concomitantly" with the shooting. Yet on appeal the overt act transmutes to an onrushing Beekman about to bludgeon Cary, necessitating her shot in self-defense. Neither Jimenez nor any of the other cases turned

37

on such a diametrically different argument birthed between trial and appeal, nor do they contain a trial court argument that negates the argument later made on appeal.

Cary never argued in the Court of Appeals or to this Court that the ends of justice exception to Rules 5A:18 or 5:25 should apply as was the case in Jimenez and Ball. And the Court of Appeals never referenced Rules 5A:18 or 5:25 regarding this issue. There is no basis to do so now.

A careful reading of the trial court record shows that the "overt act" Cary argued to that court was wholly different from that now argued on appeal. After thorough review of Cary's arguments in the trial court, her testimony at trial, and even Cary's briefs to the Court of Appeals, I conclude Rule 5:25 bars Cary from arguing on appeal that Beekman's alleged movement toward her at the time of the shooting was the overt act justifying her action as self-defense. Jimenez cannot operate to recreate Cary's self-defense claims argument on appeal. The Court of Appeals thus erred in reversing the judgment of the trial court based upon Cary's new appellate argument.

## II. THE OTHER CONTESTED INSTRUCTIONS

In view of the majority opinion's disposition of the self-defense claims, it does not address the Commonwealth's fourth and fifth assignments of error: that the Court of Appeals erred

38

in holding that (1) the jury should have been instructed about Cary's right to arm, and (2) the failure to instruct on voluntary manslaughter was not harmless.  As I believe the Court of Appeals erred as to the self-defense claims, I address these other assignments of error.  I find that the trial court did not err in either circumstance and would reverse the judgment of the Court of Appeals on both points.

## A.   Right to Arm Instruction

On appeal, the Court of Appeals determined that the evidence adduced at trial supported a finding that Cary obtained the firearm she used to shoot Beekman

> in preparation for a future deadly attack by the victim at three discreet [sic] times – [(1)] when she first purchased the firearm; [(2)] when she snatched it from her son's hands while the victim was in the bathroom and kept it by her side rather than hiding it or returning it to its place in her room; and [(3)] when she picked it up off the couch and pointed it at the victim as he again advanced toward her where she sat on the couch.

The first reason articulated by the Court of Appeals, at the time of purchase, is directly contradicted by Cary's trial testimony and is without any support in the record.  Cary never argued at trial that she obtained the weapon because she needed it as protection from Beekman.  To the contrary, she testified that she purchased the weapon because of a general need to protect her children and her home because "[t]here were people in the neighborhood breaking into people's houses."  Cary

39

testified that she purchased bullets, but "[n]ot for no real intended purposes."

The Court of Appeals conjured that this testimony of generalized need "does not preclude the conclusion that [Cary] intended to protect [her family], at least in part, from the victim." But our duty to examine the evidence in the light most favorable to Cary does not permit us to construct arguments that she did not raise at trial. Rule 5:25. Furthermore, this Court has consistently held that a right to arm instruction is correctly given only when the threat to the defendant's life is specific and nearly contemporaneous with the defendant's action in arming himself. See, e.g., Jones v. Commonwealth, 187 Va. 133, 143-44, 45 S.E.2d 908, 912 (1948) (After defendant was severely beaten by decedent, and decedent threatened that "he would kill the defendant that day" defendant returned home and waited with a pistol.). There simply was no evidence in the record to support a finding that Cary armed herself by purchasing the firearm in order to protect herself from Beekman.

Furthermore, a careful review of the record reveals that that the second and third instances the Court of Appeals recited to support an instruction that Cary armed herself "in preparation for a future deadly attack" by Beekman, were never mentioned by any party at trial or on appeal, and first came to pass when written by the Court of Appeals. While Cary did

40

testify that she took the gun away from her son, she said that she did so, not because she needed to arm herself against aggression by Beekman, but "because [she] didn't want nobody to get hurt or harmed." Cary then removed the magazine from the gun as an extra precaution "so that nobody would get hurt nowhere." There is no evidence anywhere in the record to support the Court of Appeals' determination that Cary took the gun from her son in order to arm herself against Beekman. In addition, Cary testified that she pointed the gun at Beekman in order to scare him and force him to leave. She never testified that she drew the gun to protect herself from him as he advanced toward her or argued she was entitled to a right to arm instruction on that basis.

In Boggs v. Commonwealth, 199 Va. 478, 100 S.E.2d 766 (1957), the defendant argued on appeal that the trial court had erred in refusing his requested instruction on the right to arm. Id. at 488-89, 100 S.E.2d at 774. While admitting that the evidence in that case may have supported a theory that the defendant armed himself in anticipation of an attack by the victim, we noted that according to the record,

> [the defendant] denied that he armed himself because
> he apprehended trouble from [the victim] and denied
> that he was carrying his pistol for any such reason.
> He cannot now complain of the refusal of the
> instruction which is predicated upon the fact that he
> anticipated trouble from [the victim].

41

Id. at 489, 100 S.E.2d at 774.

The Court of Appeals thus erred in determining Cary was entitled to a jury instruction on the right to arm because the record does not support any of the reasons cited.

### B. Right to Threaten Force Instruction

Coupled with its analysis regarding Cary's right to a jury instruction on the right to arm in self-defense, the Court of Appeals held sua sponte that Cary "was entitled to an instruction indicating that the right of self-defense justified her merely threatening to use such force."  In so doing, the Court of Appeals opined that while Cary's "proffered self-defense instruction did not cover this theory, her proffered right to arm instruction did."

This part of the judgment of the Court of Appeals violates the principles embodied in that Court's Rule 5A:18 and this Court's Rule 5:25 by again deciding an issue not properly preserved at trial.  It also disregards the plain language of the right to arm instruction and wrongly conflates the distinct concepts of self-defense and right to arm.  As detailed in the earlier discussion of Rule 5:25's applicability to the determination of an overt act, Rule 5A:18 and 5:25 prevent appellate courts from deciding issues that a party does not properly preserve during the trial court proceeding.

42

Cary did not argue to either the trial court or the Court of Appeals that she was entitled to a jury instruction on the right to threaten force in self-defense. As such, this issue was not before the Court of Appeals.

Moreover, the Court of Appeals erred in finding that the issue had been preserved because Cary did proffer a jury instruction regarding the right to arm. The plain language of the proffered right to arm instruction states:

> A person who reasonably believes that another intends to attack her for the purpose of killing her or doing her serious bodily harm has a right to arm herself for her own necessary protection. In such a case no inference of malice can be drawn from the fact that she armed herself.

Nothing in this language addresses a right to threaten use of force. The concepts are separate principles of law, and by arguing a right to arm, Cary did not argue a right to threaten use of force.

Consequently, the Court of Appeals erred in holding that Cary was entitled to a jury instruction on the right to threaten force.

### C.    Voluntary Manslaughter Instruction

At trial, the jury was instructed on first-degree murder, second-degree murder, and involuntary manslaughter. On appeal to the Court of Appeals, Cary argued that the trial court erred

43

in denying her proffered instruction on voluntary manslaughter.
The Court of Appeals ultimately agreed with Cary, but noted:

> under ordinary circumstances, the jury's conviction of appellant for first-degree murder would preclude a finding that the court's failure to instruct on voluntary manslaughter was reversible error. [In this case] voluntary manslaughter was not the only legal theory on which the trial court erroneously failed to instruct the jury. . . . [I]t failed to instruct on self-defense and the right to arm.

This language indicates that had the Court of Appeals not found error on the other issues, it would have found no error in the failure to give an instruction on voluntary manslaughter.

As I do not believe the trial court erred regarding the self-defense claims or the right to arm instruction, the jury's verdict of first-degree murder should stand. Therefore, there was no error in failing to give a voluntary manslaughter instruction. This Court's affirmation of the Court of Appeals' decision in Turner v. Commonwealth, 23 Va. App. 270, 476 S.E.2d 504 (1996), aff'd, 255 Va. 1, 492 S.E.2d 447 (1997), makes this point clear.

In Turner, the failure to instruct the jury on voluntary manslaughter was harmless because the jury had rejected second-degree murder in reaching its verdict of guilty of first-degree murder. By rejecting the lesser-included offense of second-degree murder, "the jury found beyond a reasonable doubt that appellant acted not only maliciously, but also willfully,

44

deliberately, and premeditatedly." Id. at 277, 476 S.E.2d at 508. Because "premeditation and reasonable provocation cannot co-exist . . . [the jury] necessarily rejected the factual basis upon which it might have rendered a verdict on the lesser included offense of voluntary manslaughter." Id. at 277-78, 476 S.E.2d at 508. Thus, as I would find Cary's first-degree murder conviction should stand, the trial court did not err in failing to give an instruction on voluntary manslaughter.

## III. CONCLUSION

Because Cary never argued to the trial court that the overt act justifying the self-defense claims was that an advancing Beekman forced her to act in self-defense, I would reverse the judgment of the Court of Appeals regarding the self-defense claims because those are barred under Rule 5:25. I would also reverse the Court of Appeals' judgment that the trial court erred in refusing Cary's jury instructions on the right to arm and voluntary manslaughter for the reasons stated above.

Consequently, I respectfully dissent from the majority opinion and would reverse the judgment of the Court of Appeals and affirm the judgment of the trial court.