COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Ortiz and Senior Judge Annunziata
Argued at Fairfax, Virginia

**UNPUBLISHED**

YARED TEKLE DENBU

v.       Record No. 1962-22-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE DANIEL E. ORTIZ
SEPTEMBER 26, 2023

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge

Robert Whitestone (Whitestone Young PC, on brief), for appellant.

Michael L. Eaton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, the Arlington County Circuit Court convicted Yared Tekle Denbu of

three counts of attempted malicious wounding and one count of using a firearm in the commission

of a felony.  Denbu contends that the trial court erred in refusing jury instructions on self-defense

and defense of others.  We find no error and affirm the judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021).  In doing so, we discard any conflicting evidence, and we regard as

true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be

drawn from that evidence. *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018).

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

On August 30, 2020, Robert Johnson, Victor Kuhn, and Christian Boamah were working as security guards at the Purple Lounge in Arlington, Virginia, which closed around 5:00 a.m. The security guards were helping patrons leave around 4:55 a.m. when Denbu appeared at the door with two men, Kedus Ararsa and "B," and attempted to enter the establishment. Security explained that they could not enter, but the trio haggled with the guards, argued with the manager, used racial slurs, and refused to leave. After the manager told security that Denbu "ha[d] to go," the guards began ushering the trio off of the property.

The guards advanced forward and held their hands out to move Denbu and his friends to the sidewalk, away from the Purple Lounge property, without touching them. Kuhn testified that Denbu stated in a loud voice: "I have something for you." Denbu then circled behind the guards. Security footage showed Denbu reach into his waistband and draw a firearm, with his back turned. As Denbu turned to face the group, B was slapped in the head by Kuhn. Denbu began withdrawing his firearm before witnessing B's slap to the head. Denbu discharged his firearm a few seconds later—without seeing the slap —towards the group, but in the air. Johnson and Kuhn stated that Denbu waved the firearm around like "a three-year-old that has a Nerf gun" or a high-pressure "water hose."

Ararsa got in front of Denbu, between him and Johnson, and pushed Denbu into the parking lot. From behind a vehicle, Johnson fired his gun twice and struck Ararsa in the shoulder. Ararsa fell to the ground. Denbu ran off and hid behind a food truck.

After checking on Ararsa, Johnson and Kuhn retreated to the front porch of the lounge and sought cover behind the brick wall. Denbu then emerged from behind the food truck, ran towards the entrance of Purple Lounge, and fired at least three shots as he advanced toward the security guards. Denbu did not stop moving forward until Christian Boamah pulled out his gun and fired

from behind the brick wall in the doorway.[1] Denbu retreated and hid behind a garbage dumpster. When Denbu emerged again, Johnson fired a shot at him. Denbu ran to the back of the parking lot, entered a car, and fled the scene. Police stopped Denbu's vehicle about two blocks from Purple Lounge. Denbu told police that he did not have a gun. The police took Denbu to the hospital for treatment for a gunshot abrasion on the back of his neck.

Detective J.D. Cox interviewed Denbu at the police station on September 2, 2020. Denbu said that when he and two friends arrived at Purple Lounge, they were told it was closed so they headed back to his car. Denbu said he heard a gunshot. Denbu then invoked his right to counsel, and questioning ceased.

Testifying on his own behalf, Denbu said that while the security guards were trying to remove him from the property, he fired a shot into the air because he was scared that the guards would harm him and B. Denbu claimed that the security guards pushed him and B, before one of them struck B in the head. Denbu said that as he backed away one of the guards shot Ararsa, and a bullet grazed Denbu's neck. Denbu claimed that when he returned to the parking lot to check on Ararsa, the guards shot at him first, so he returned fire.

At the conclusion of the evidence, defense counsel proffered two instructions, labeled Instructions A and B, concerning the defense of others. Instruction A stated:

> If you believe that the defendant reasonably believed that the person to be defended ("B") was without fault in provoking or bringing on the assault, and you further believe that:
>
> (1) the defendant reasonably feared, under the circumstances as they appeared to him, that the person to be defended was in imminent danger of bodily harm, and
>
> (2) the defendant used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect the person to be defended from the perceived harm, then the defendant

---

[1] Kuhn testified that the security guards did nothing to provoke Denbu and that Denbu was the first to fire shots when he reappeared in the parking lot.

> acted in the defense of others, and you shall find the defendant not guilty[.]

Instruction B was identical to Instruction A except that it pertained to defense of Ararsa. The trial court refused the proposed instructions.

The jury found Denbu guilty of attempted malicious wounding of Johnson, Kuhn, and Boamah and using a firearm in the commission of a felony. The trial court convicted Denbu of the offenses. This appeal followed.

## ANALYSIS

Denbu contends that the trial court erred in denying his proposed jury instructions. "As a general rule, the matter of granting and denying instructions . . . rest[s] in the sound discretion of the trial court." *Dandridge v. Commonwealth*, 72 Va. App. 669, 679 (2021). "The trial court's 'broad discretion in giving or denying instructions requested' is reviewed for an abuse of discretion." *Id.* (quoting *King v. Commonwealth*, 64 Va. App. 580, 586 (2015) (en banc)). "When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." *Pena Pinedo v. Commonwealth*, 300 Va. 116, 118 (2021). "Jury instructions are proper only when supported by the evidence, and 'more than a scintilla of evidence is necessary to support a[n] . . . instruction requested by the defendant.'" *Commonwealth v. Leal*, 265 Va. 142, 145 (2003) (quoting *Commonwealth v. Donkor*, 256 Va. 443, 445 (1998)). "[I]t is not error to refuse an instruction when there is no evidence to support it." *Commonwealth v. Cary*, 271 Va. 87, 100 (2006).

Although Denbu contends that the trial court erred in denying his proposed jury instructions on both self-defense and the defense of others, this assertion is belied by the record. As a preliminary matter, the record shows that Denbu offered no jury instruction on self-defense. Thus, we cannot consider this argument on appeal. *See* Rule 5A:18; *Teleguz v. Commonwealth*,

273 Va. 458, 470-71 (2007) (assignments of error that do not address rulings of the trial court not considered on appeal).

Denbu argues that he was entitled to his proposed "defense of others" instructions because the surveillance footage showed Kuhn strike B in the head. As such, Denbu asserts that his response—firing his gun into the air—was reasonable to protect B and constituted a "warning shot," not "an act of violence." Regarding Instruction B—defense of Ararsa—Denbu does not argue that he fired a gunshot to defend Ararsa.[2] He has thus waived any claim about the trial court's refusal of Instruction B. *See* Rule 5A:20(e).

Assuming *arguendo* that the proposed Instruction A—defense of "B"—properly recited the applicable law,[3] the record nevertheless fails to support this proposed instruction by a scintilla of evidence. The surveillance footage clearly shows Denbu withdrawing his firearm and raising it into the air with his back turned and prior to B's slap to the head. Thus, Denbu's first round of gunfire was clearly not in defense of B. And the testimony and video demonstrated that B had already vanished when Denbu emerged from his hiding place, charged towards Purple Lounge, and fired his gun repeatedly at the lounge entrance. Thus, Denbu's second round of gunfire was also clearly not in defense of B. Finally, there was no evidence that the security guards provoked Denbu's actions. Because Denbu's proposed Instruction A—that he acted in

---

[2] Although Denbu claims that he returned to the parking lot to help Ararsa after Ararsa was shot, when Denbu was "met with gunfire," he alleges only that his actions were in *self*-defense, not defense of Ararsa. Because Denbu offered no instruction on self-defense, we do not consider this question.

[3] We decline to reach a finding on whether the proposed jury instruction contained the appropriate law. We further decline to analyze whether discharging a firearm in the air is a proportional response to a slap to the head. The doctrine of judicial restraint requires us to "decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)); *see also Spruill v. Garcia*, 298 Va. 120, 127 (2019).

defense of "B"—was not supported by more than a scintilla of evidence, the trial court did not abuse its discretion in refusing it.

## CONCLUSION

For the above reasons, we affirm the judgment of the trial court.

*Affirmed.*