UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Alston and Chafin
Argued at Salem, Virginia


JUSTIN METRO AREHART

MEMORANDUM OPINION* BY
v.        Record No. 0555-13-3        JUDGE TERESA M. CHAFIN
MAY 20, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Victor V. Ludwig, Judge

Dana R. Cormier for appellant.

Victoria Johnson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


In a bench trial, Justin Metro Arehart ("Arehart") was convicted of unlawful wounding in

violation of Code § 18.2-51.  On appeal, he maintains the trial court erred in excluding evidence

regarding the victim's specific incidents of prior violent conduct to establish his character for

"turbulence and violence" and to corroborate Arehart's evidence that he acted in self-defense.

For the reasons that follow, we affirm the decision of the trial court.

Background

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).  So viewed, the evidence showed that on August 1, 2012,

Arehart was at the home of his girlfriend, Tammy Halterman, who lived "caddy-corner" from

Stephen McNeal.  McNeal, Arehart, and Halterman were all outside when McNeal began to

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

verbally taunt Arehart by making vulgar comments about Halterman. This taunting turned into a verbal argument between the two men which escalated when McNeal made a discourteous comment about Halterman's moral character. At this point, Halterman went inside her home, activated the surveillance cameras attached to her house, and recorded the encounter between the two men. [1]

Arehart threw an empty Mountain Dew bottle at McNeal and then crossed the street. When Arehart reached McNeal, he hit McNeal in the head, knocking him to the ground. Once McNeal was on the ground, Arehart hit him several more times. Arehart then got up and walked back towards Halterman's house, leaving McNeal on the ground.

When Deputy Thomas Pultz and Sergeant David Lotts of the Augusta County Sheriff's Department arrived, they found McNeal sitting in a chair on his front porch, bleeding and disoriented. His wife took him to the hospital. McNeal's cheek bone and "the interior and posterior walls of [his] maxillary sinus" were fractured, and he had bleeding in the soft tissue around his right eye. Due to the injuries he sustained, McNeal must now wear glasses and suffers headaches.

Arehart told the officers that McNeal was the aggressor in the fight. After he made the vulgar comments about Halterman, Arehart claimed that McNeal left his driveway and walked across the street to "[Arehart] and either hit him or tried to hit him." Arehart claimed to have hit McNeal in self-defense.

At trial, Arehart again asserted that he acted in self-defense and sought to establish McNeal's character for violence in support of that defense. Arehart presented evidence that McNeal and Halterman had a troubled past arising from a property dispute. After Halterman

---

[1] Although Halterman recorded the confrontation between Arehart and McNeal and later viewed the recording with the investigating officers, Halterman recorded over the video prior to trial. The officers testified as to the contents of the video at trial, and the trial court relied upon the officers' testimony in making its factual findings.

testified she tried to avoid McNeal, Arehart asked what McNeal had done to make her avoid him.

The Commonwealth objected on relevance grounds. Arehart responded:

> [McNeal's] character and behavior in the past is relevant to [Arehart's self-defense claim], to what Mr. Arehart perceived when he had this confrontation with Mr. McNeal on August 1, 2012. It didn't come out of nowhere. I'm asking Ms. Halterman to tell us about her past experiences with Mr. [McNeal]. And they've been [sic]- - already been testimony that Mr. Arehart told the police that Mr. McNeal had made threats or had made comments about Ms. Halterman during the altercation.

The trial court rejected the officers' testimony as a basis for a self-defense claim, as it was "merely transactional information" that could not form "the basis for the introduction of this evidence." The trial court sustained the Commonwealth's objection, and Arehart resumed questioning Halterman.

At the conclusion of Halterman's testimony, Arehart revisited the evidentiary rulings concerning the victim's character and argued evidence of McNeal's physical threats to Halterman was admissible under Virginia Rule of Evidence 2:404(a)(2), which makes admissible "evidence of a pertinent character trait or acts of violence by the victim of the crime offered by [an] accused who has adduced evidence of self-defense." The trial court reviewed the rule and explained the basis for its evidentiary holding was that Arehart sought to present evidence of threats of violence, rather than acts of violence, against Halterman:

> What I ruled was, you got in the character trait that his reputation, in this particular instance, peacefulness is not good. Then acts of violence by the victim of the crime. Well, what I said was, if you want to put in acts of violence, it's going to have to be acts of violence against somebody. I'm not going to let you put in evidence of throwing rocks at her house or eggs or tomatoes or whatever. Not going to let you get into threats of violence. It has to be acts of violence before it's going to come in. . . . [Y]ou weren't even asking about an act of violence, you were asking about something much broader than that, so I'll . . . stick to my ruling. . . . You've got acts of violence against [Halterman], who happens to be the witness on the stand right now, I'll admit it.

Arehart proffered the evidence he sought to introduce was: "Threats of violence specifically that Mr. McNeal had made against Ms. Halterman's children would be the specific acts that I would try to get in."

Another of McNeal's neighbors, Howard Chandler, testified that McNeal had a reputation as "a liar." Sabrina Smith, a former neighbor of McNeal, testified that McNeal had a bad reputation for both truthfulness and peacefulness. Smith further recounted that approximately ten years earlier, McNeal "flipped" hot cigarette ash on her son's back, causing a scar. The Commonwealth objected to Smith's testimony on the grounds that the incident was too attenuated in time to be relevant to McNeal's present character and that there was no evidence Arehart was aware of the incident. The trial court concluded the incident was sufficiently recent, but admitted the evidence "provisionally," concluding that whether the evidence "will be considered at all will be dependent on whether there is evidence that [Arehart] knew about it."

Finally, Arehart testified on his own behalf and alleged that, as their verbal altercation escalated, both he and McNeal moved out into the middle of the road. According to Arehart, McNeal "flicked a cigarette" at him and, after the two exchanged more insults, McNeal "stiff arm[ed]" Arehart "straight up underneath [his] chin." Arehart claimed he hit McNeal "[n]o more than four times" in self-defense. The officers testified the video recording of the assault did not show McNeal strike Arehart, nor did it show Arehart react to a blow. Arehart further testified that during their encounter, McNeal made a verbal threat towards Halterman's son, stating, "If that little asshole rides his bike out in my road again, I will run over him." When Arehart attempted to testify regarding past threats to Halterman's son, the trial court sustained the Commonwealth's objection, as that evidence had previously been ruled inadmissible. Arehart then stated McNeal "has hurt children in the past." In explaining that statement, Arehart testified he had "seen the spot on [Smith's son's] back where Steve McNeal burned him with a cigarette."

- 4 -

When Arehart stated he knew McNeal had burned the child because the child had told Arehart about it, the trial court sustained the Commonwealth's hearsay objection. Finally, Arehart stated he had seen McNeal "commit acts of violence" towards Halterman, such as "flipping the bird" and "calling names."

In its detailed factual findings, the trial court acknowledged Arehart was provoked and "probably knew McNeal's reputation in the neighborhood for being a loud-mouth, a boor, and a trouble-maker, and when McNeal began making his outrageous comments, Arehart responded in kind." However, the trial court concluded that "provocation does not justify a battery at any level." The trial court also rejected Arehart's self-defense theory, noting that all of the witnesses, save Arehart himself, agreed that the altercation between the two men occurred on McNeal's side of the road. "Arehart crossed the road bent on trouble." The trial court credited the investigating officers' testimony regarding the contents of the video recording, and concluded McNeal was not the aggressor and did not strike Arehart. Based on these findings, and its conclusion that the physical assault in this case was sufficient to constitute an unlawful wounding, the trial court found Arehart guilty.

Analysis

On appeal, Arehart argues the trial court erred in excluding evidence regarding the victim's specific incidents of prior violent conduct to establish his character for "turbulence and violence" and to corroborate appellant's evidence he acted in self-defense. Specifically, Arehart contends that the trial court erred when it prohibited Halterman from testifying regarding McNeal's prior threats towards her, her children, and her property. Arehart further argues that the trial court erred in not allowing Arehart to testify regarding McNeal's prior threats towards Halterman's son.[2]

---

[2] Arehart also assigns error to the trial court's decision "provisionally" allowing testimony from Sabrina Smith regarding McNeal's specific acts of violence against her child, but

- 5 -

Assuming without deciding that the trial court erred by excluding the disputed evidence from Halterman and Arehart, any error was harmless as the Commonwealth presented overwhelming evidence that Arehart did not act in self-defense. The Supreme Court of Virginia has adopted the test of the United States Supreme Court for determining non-constitutional harmless error. Billips v. Commonwealth, 274 Va. 805, 810, 652 S.E.2d 99, 102 (2007). That test has been stated as follows:

> "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand."

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)). "Under this standard, non-constitutional error is harmless if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison that we can conclude the error 'failed to have any "substantial influence" on the verdict.'" Schwartz v. Schwartz, 46 Va. App. 145, 159, 616 S.E.2d 59, 66 (2005) (quoting United States v. Lane, 474 U.S. 438, 450 (1986)). The Commonwealth has the burden of showing harmless error. Jones v. Commonwealth, 50 Va. App. 437, 446, 650 S.E.2d 859, 864 (2007).

"In its principal application, the doctrine of self-defense, a branch of the broader rule of necessity[,] is a possible defense to charges of unlawful contact ranging from simple assault

---

would not allow Arehart to testify regarding his knowledge of Mr. McNeal's violence towards Smith's son. Arehart did not object to the provisional nature of the trial court's decision to allow the evidence or inform the trial court of any potential error. When the trial court sustained the Commonwealth's hearsay objection to Arehart's testimony that he only knew McNeal had burned the child's back because the child had told him about it, Arehart again failed to alert the trial court to any potential error. Accordingly, this challenge to the exclusion of the evidence is defaulted under Rule 5A:18.

through murder." John L. Costello, <u>Virginia Criminal Law and Procedure</u> § 33.1[2] (2009). "The common law of Virginia 'has long recognized that a person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault.'" <u>Id.</u> (quoting <u>Diffendal v. Commonwealth</u>, 8 Va. App. 417, 421, 382 S.E.2d 24, 25 (1989)); <u>see also</u> <u>Jackson v. Commonwealth</u>, 96 Va. 107, 113, 30 S.E. 452, 454 (1898) (recognizing the right of a person who is reasonably apprehended "to repel such assault by all the force he deemed necessary, . . . [and to] become the assailant, inflicting bodily wounds until his person was out of danger").

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." <u>Smith v. Commonwealth</u>, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993) (citing <u>McGhee v. Commonwealth</u>, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." <u>Id.</u> (citing <u>Yarborough v. Commonwealth</u>, 217 Va. 971, 978-79, 234 S.E.2d 286, 292 (1977)). However, "undisputed facts may establish self-defense as a matter of law." <u>Lynn v. Commonwealth</u>, 27 Va. App. 336, 353, 499 S.E.2d 1, 9 (1998) (citing <u>Hensley v. Commonwealth</u>, 161 Va. 1033, 170 S.E. 568 (1933)). If a self-defense claim is proved, the accused is entitled to an acquittal. <u>Id.</u> (citing <u>Bailey v. Commonwealth</u>, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958)).

A plea of self-defense is a plea of necessity and, in determining whether a defendant was entitled to the plea, the question for the fact finder is whether "the circumstances immediately surrounding the [assault], specifically, the actions of the [victim] at that time were sufficient to create a reasonable belief of an imminent danger which had to be met." <u>Commonwealth v.</u>

Sands, 262 Va. 724, 730, 553 S.E.2d 733, 737 (2001).[3] When claiming justifiable or excusable self-defense, the evidence must show "some overt act indicative of imminent danger at the time [of the assault]." Vlastaris v. Commonwealth, 164 Va. 647, 652, 178 S.E. 775, 776 (1935). "In other words, a defendant must *wait* till some overt act is done." Sands, 262 Va. at 729, 553 S.E.2d at 736 (citation and internal quotation marks omitted) (emphasis added). The "bare fear" of serious bodily injury or even death, however well grounded, will not justify an assault "by way of prevention." Vlastaris, 164 Va. at 651, 178 S.E. at 776. Notably, a defendant is not entitled to a plea of self-defense when he "go[es] a-gunning for an adversary." Sims v. Commonwealth, 134 Va. 736, 760, 115 S.E. 382, 390 (1922).

In this case, the evidence failed to prove that McNeal committed an overt act indicative of immediate danger to justify or excuse Arehart's assault.[4] Arehart became increasingly angry as McNeal verbally taunted him, and then crossed the street to McNeal's property. The investigating officers, who viewed the video recording of the crime, did not see McNeal strike Arehart, but instead saw Arehart strike McNeal, knock him to the ground, and continue to beat him about the head while he lay there.

Despite the fact that McNeal made "vulgar," "obnoxious," and "outrageous" comments immediately before Arehart attacked him, was known to be "a loud-mouth, a boor, and a troublemaker," and otherwise "started something with his mouth that he probably never could have finished," none of McNeal's actions justified Arehart crossing the street and physically attacking McNeal in his driveway. As this Court stated in Graham v. Commonwealth, 31 Va. App. 662, 672, 525 S.E.2d 567, 572 (2000), "[s]elf-defense . . . is a defense to an *act of*

---

[3] Imminent danger means "an immediate, real threat to one's safety." Sands, 262 Va. at 729, 553 S.E.2d at 736 (citation omitted).

[4] While Arehart testified that it was McNeal who struck the first blow, the trial court was entitled to reject Arehart's self-serving testimony. Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

*violence that repels violence* directed at the defendant." (Emphasis added). "[W]ords alone, no matter how grievous or insulting, are never justification for assault by force or violence." Harper v. Commonwealth, 196 Va. 723, 727, 85 S.E.2d 249, 252 (1955).

McNeal accused Halterman of having a loose moral character, but did not threaten her harm. McNeal's conditional future threat against Halterman's son did not pose any kind of imminent threat to Halterman's son or to Arehart himself.[5] Quite simply, Arehart was not repelling any act of violence directed toward him or another. Thus, even assuming the trial court committed error in excluding evidence regarding McNeal's specific incidents of prior violent conduct to establish his character for "turbulence and violence" and to corroborate Arehart's evidence that he acted in self-defense, we find that such error was harmless. Accordingly, we affirm the trial court's decision.

Affirmed.

---

[5] [T]he limitations on the right to defend one's self are equally applicable, with slight modifications, to one's right to defend another. One must reasonably apprehend death or serious bodily harm to another before he or she is privileged to use force in defense of the other person. The amount of force which may be used must be reasonable in relation to the harm threatened.

Foster v. Commonwealth, 13 Va. App. 380, 386, 412 S.E.2d 198, 202 (1991).