# Richmond

PHILLIP VLASTARIS V. COMMONWEALTH OF VIRGINIA.

March 14, 1935.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*B. A. Banks,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

Emile Schop was shot and killed by Phillip Vlastaris on the afternoon of September 23, 1933, on Monticello avenue, in the city of Norfolk, Virginia.

During the latter part of the year 1932, the two men appeared to have been on friendly terms. They were for a time jointly operating a push cart for the purpose of vending fruits. The accused testified that on one occasion, while they were jointly engaged in the above enterprise, Schop took the push cart, without accused's permission, and sold the wares without making compensation to him for his share in the proceeds. This was the beginning of their troubles, of which there were many, culminating in the tragedy of September 23, 1933.

The accused was living at this time over the store of one Frank Stellius, and when he was not engaged in his work, spent much of his time there. The first personal encounter between them was on December 28, 1932, in the Stellius store. On this occasion Schop went into the store and assaulted the accused by striking and kicking him which caused the accused to walk lame for several weeks. Theretofore the accused had developed a rupture, which was aggravated by being kicked by Schop. Again on September 23, 1933, Schop entered the store and made a very opprobrious remark to the accused, who then asked him when he intended to pay him the money that he owed him. Schop then applied to him the vilest

epithet. The accused approached him for the purpose of ejecting him from the store when Schop again applied to him the most abusive language and struck the accused and kicked him in the rupture. The accused picked up an axe at a wood pile but did not advance toward Schop, who said to him, with an oath, that he would kill him the next time, "anyhow."

This was in the afternoon about an hour before the meeting on Monticello avenue which resulted in the fatality.

The accused testified that on two prior occasions Schop had drawn a gun on him without provocation.

The testimony of the accused as to the shooting was that he was on his way to a theatre and had taken the direct and accustomed route. That as he was passing along the street he looked up and saw Schop, about fifteen or twenty feet away, approaching him from the opposite direction, both walking on the sidewalk on the same side of the street; that their meeting, so far as he was concerned, was accidental; that he stepped off the sidewalk to cross to the opposite side of the street and was six or eight feet into the street when Schop called and said: "Stop, you bastard, I'll kill you now" and threw his hand in his hip pocket as if to draw a gun; that he drew his gun from his pocket and fired the first shot into the air and called to Schop to stop; that he continued walking towards him with his hands in his hip pocket; that he fired three or four shots at him until he fell; that when the firing took place he was standing six or eight feet, in the street, from the sidewalk and Schop was on the sidewalk; that he had armed himself because he was "scared" and thought Schop might return and carry out his previous threat; that after the firing, when fleeing from the scene, he heard a shot and looked back, thinking that Schop was firing at him, when he saw a police officer on the opposite side of the street with a pistol in his hand, and that he raised his hands in the air and walked to the officer and surrendered himself.

Schop was shot in the left arm, the bullet entering the chest and causing death.

Joseph Schelleto, for the defense, testified that he was walking behind the accused on Monticello avenue and heard Schop make the threat attributed to him by the defendant, and saw him put his hand in his hip pocket.

It was in evidence that this witness had a criminal record and that he and the defendant had been in jail together for several weeks before the trial.

Schop did not have on a coat at the time he was killed and he was not armed.

The defendant was corroborated as to his account of the assault of December 28, 1932, by Austin Dancy, a colored employee of Stellius, and by Stellius, and as to the assault of September 23, 1933, he was corroborated by Dancy, who appeared to have been the only person present at that time, except the participants.

Leon Nowitsky, a member of the police department of the city of Norfolk, testified that on September 25, 1933, two days after the shooting, he talked with the defendant in the police court and in reply to the question why he shot Schop he stated that he, Schop, had been talking about him and that earlier in the afternoon on the day of the shooting he had struck him in the face and kicked him on his leg, and he showed the officer a black spot on his leg; that he got his gun and shot him.

The witness testified that he made a note of everything the defendant told him but when he was requested to read his notes there was no reference to a gun.

This was urged by the defense as weakening the testimony.

The defendant established a reputation as a peaceful and law abiding citizen by the testimony of witnesses, under whom he had worked, at the Norfolk Navy Yard and the Dry Dock Company at Newport News, and by others with whom he had been associated.

C. P. Donnel, a newspaper reporter, testified that he was present when the defendant was brought to the po-

lice station by Officer Harrison, and he heard him state that Schop, "assaulted him earlier in the day in a store at the corner of Bank street and Only road and had threatened to kill him."

Stellius' store was situated at Bank street and Only road.

We have stated the facts as strongly, from the accused's standpoint, as the evidence seems to justify.

They undoubtedly tend to establish aggravated and unprovoked assaults upon the accused, and threats against his life, before the shooting; they tend to establish a menacing attitude towards the accused and a present threat to take his life at the time of the shooting. This, however, is the most that can be said. No overt act of Schop, on the occasion of the homicide, in connection with a gun, is pointed out. Certainly on this occasion he did not make an assault upon the accused. According to his version of the matter Schop put his hand in his hip pocket and said, "I'll kill you now," but he remained on the sidewalk. He did not follow the accused into the street. The accused said that he first fired into the air. Surely the failure of his assailant to then withdraw his hand from his pocket with the gun, charged him with the reasonable conviction, that he had no gun—that he was not armed—and that accused's fears for his life were without foundation.

The plea of self-defense is a plea of necessity and the necessity must be shown to exist or there must be shown such reasonable apprehension of the immediate danger, by some overt act, as to amount to the creation of necessity.

We cannot say that such element was present in this case.

It was laid down in *Stoneman's Case* (*Stoneman* v. *Com.*), 66 Va. (25 Gratt.) 887, that a bare fear that a man intends to commit a felony, however well grounded, will not warrant the killing of the party by way of prevention.

There must be some overt act indicative of imminent danger at the time.

In Bishop on Criminal Law, 6th Ed., 2nd Vol., section 627, it is said: "Although it is lawful for one to deprive of life another meditating his life, yet he must wait till some overt act is done in pursuance of the meditation. In other words, till the danger becomes imminent."

It cannot be said that there was no conflict in the evidence. That being so, the credibility and weight of the testimony were questions for the jury. Although the enmity of the two men, accompanied by open and violent ruptures, existed for some nine months, no one ever saw Schop have a pistol, except the accused, and the jury was not bound to believe his statement.

While the accused's case has a strong appeal to one's compassion, we cannot say that the verdict of the jury, and the judgment of the trying court sustaining it, was plainly wrong or without evidence to support it. The judgment must be affirmed.

*Affirmed.*