COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Alston and Senior Judge Haley
Argued at Richmond, Virginia

UNPUBLISHED

JODI J. HOPE

MEMORANDUM OPINION[*] BY
v.       Record No. 0176-15-2          JUDGE ROSSIE D. ALSTON, JR.
                                                JANUARY 24, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge Designate

Joan J. Burroughs (Law Offices of Sara M. Gaborik, on brief), for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Jodi J. Hope (appellant) appeals her convictions of one count of second-degree murder in

violation of Code § 18.2-32, one count of aggravated malicious wounding in violation of Code

§ 18.2-51.2, and two counts of use of a firearm in the commission of a felony in violation of

Code § 18.2-53.1. Stated briefly, appellant argues in her four assignments of error that the trial

court erred in failing to instruct the jury as to appellant's self-defense claim in regard to one of

the victims and also by failing to allow testimony about the entirety of a telephone conversation

appellant had following her police interview. We disagree with appellant, and affirm the

decision of the trial court.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Background

On April 5, 2014 around 5:20 p.m., Shawne Cotten was in an altercation with Dorsey and Antonio Harris at Southside Plaza in the city of Richmond. The verbal altercation quickly escalated when Dorsey took out a knife and threatened to slash Cotten's face. At appellant's jury trial, Cotten testified that Antonio "said something" and when Cotten turned around, Dorsey hit Cotten "from the side." Dorsey then slashed all four tires on Cotten's vehicle. Cotten had his car towed from the parking lot and while his vehicle was in the tire shop, he went to his mother's house. During that time, Cotten explained to his mother what occurred.

Angie Martin, Cotten's mother, testified that after Cotten left her home she called appellant, who was Cotten's girlfriend, assuming Cotten had already told her about the altercation. Martin ended up explaining to appellant what happened. Cotten testified that around 7:30 p.m. or 7:45 p.m. he spoke with appellant and told her that everything was okay, but, he did not discuss any specifics about the incident with her. Cotten stated that when he got off the telephone with appellant, she was going to pick up a salad at Dante's, which Cotten had ordered earlier but never picked up due to the altercation.

In her defense, appellant testified that the only reason she left the hospital, where she worked, early on April 5, 2014, was for health reasons. On cross-examination, appellant denied telling her supervisor that her husband had been stabbed. Appellant admitted that she kept a gun in the glove compartment of her truck for protection as she frequently walked from her parking spot to the hospital in the dark. Appellant testified that she was unaware that Martin was also going to Southside Plaza until Martin came up behind her at Dante's.

Martin testified that she went to Southside Plaza because she was concerned about her son given the altercation that occurred earlier. Martin testified that she was waiting with

appellant at Dante's for the salad and then they both went to appellant's truck. Shortly after, Martin went back toward Dante's, which is when she heard two men talking about someone. Martin testified that at this point she realized that the two men were Dorsey and Antonio.

Appellant testified that she exited her truck when she saw Martin begin to back up as the Harris brothers approached her. Martin stated that the brothers said Cotten "was soft, and [that] he was a mama's boy, a pretty boy." Appellant also stated that the Martin brothers had said that Cotten sent his mother and his girlfriend out there "to do his dirty work." Appellant overheard what they were saying about Cotten, which is when she realized who the Harris brothers were. During the trial, the Commonwealth played a video showing Dorsey, Antonio, Martin, and appellant in a conversation. In this video Martin confronted the Harris brothers when she heard them talking about Cotten. Dorsey testified that it was then that appellant asked whether Dorsey slashed Cotten's tires and he admitted to doing so.

Cotten testified that around that same time he went back to Southside Plaza to get his salad but saw the Harris brothers and decided to keep driving instead of confronting them again. At some point thereafter, Cotten heard "loud voices, arguing, [and] male voices" over his telephone Bluetooth connection with appellant. Shortly after, Cotten went back to Southside Plaza. Cotten stated that he parked his car and ushered his mother and appellant away from that area, telling Dorsey, after Dorsey had taken his knife out again, that there was nothing to talk about. At that point, Cotten believed that the incident had subsided and he left with his friend who had accompanied him. Martin testified that they all eventually started walking back to their respective cars, but that the Harris brothers started threatening appellant and Martin. Martin stated that one of the brothers was walking towards them, with his hand in his pocket, when appellant started shooting her gun.

- 3 -

Cotten testified that his Bluetooth was still on after he left Southside Plaza and he "heard a commotion," in which he heard Dorsey make several threats, and then he heard gunshots. Dorsey, on the other hand, testified that Martin, appellant, Antonio, and he exchanged a "few more words" and then he and Antonio started walking toward Antonio's car. Dorsey denied that anyone used curse words and also denied displaying a weapon. Dorsey stated that he heard gunshots when he was about halfway back to the van but that he did not turn around until the fourth or fifth shot. Dorsey reiterated that both he and Antonio were walking away from appellant and Martin when appellant shot the gun. He further testified that Antonio did not have a weapon in either hand when he was shot and that both men were shot from behind. On cross-examination, appellant did not recall seeing anything in either Dorsey's or Antonio's hands, but mentioned that Dorsey's right hand was in his pocket. Appellant further admitted that no one pointed a gun or knife at her, Martin, or Cotten at this time. Dorsey indicated that he was shot in the arm but that after Antonio fell back, he never got up. Deputy Warner Hutchinson, an off-duty police officer who was at Southside Plaza at the time of the incident, testified that he did not see any weapon on or nearby Antonio's body.

Jonathan Davis testified that he drove to Southside Plaza on the night of the incident to pick up a pizza from Dante's. Upon driving up he overheard "something about somebody being slapped" and "something about a knife." Davis testified that appellant was the most animated and angry out of the group. On cross-examination, Davis admitted telling a detective that he heard appellant yell at Antonio to "get out of her circumference." Davis further stated that appellant seemed to be "fishing" for the confrontation to continue, but was "definitely concerned with her space."

Dr. Kevin Whaley, the assistant chief medical examiner at the central office in Richmond, performed the autopsy on Antonio. He testified that he identified five bullet wounds on Antonio's body. Four of which were non-lethal: two entered the lateral side of his right buttock, one entered his back, and one entered his hand. The lethal shot was to the back of Antonio's neck. Dr. Whaley testified that Antonio's wounds were all consistent with being shot from behind.

Appellant testified that she recalled speaking to Cotten on the telephone from jail the night of the shooting and the following night but she did not recall encouraging Cotten to have Martin say that the Harris brothers were coming at her when she fired the gun, nor did she remember asking what Martin told the police. On re-direct examination, appellant sought to read the entire transcript of her telephone conversation with Cotten into the record. The Commonwealth objected, arguing that it was self-serving hearsay. Appellant argued that the Commonwealth "opened the door" by asking questions about the conversation on cross-examination. The Commonwealth also went into one portion of a statement which appellant argued allowed her to discuss the entirety of that same statement. The trial court sustained the objection and did not allow appellant to read the entire transcript of her conversation with Cotten to the jury. Appellant, however, read the entire conversation into the record to preserve her objection to the trial court's ruling.

Detective Gregory Russell testified for the Commonwealth in rebuttal and stated that when appellant called Cotten from jail she said to him: "I didn't see that. So maybe if [Martin] can tell them, you know, he ran up on us and that he had a knife, um, that'll help." At the end of the Commonwealth's rebuttal case, appellant moved to re-open the case to allow appellant to play the entire jail conversation. The trial court again denied the motion but noted that it listened

to the tape and parts of it were unintelligible and that those were the tapes the Commonwealth

had and provided to appellant.

While discussing jury instructions, appellant offered a self-defense instruction which

read:

> If you believe that [appellant] was to some degree at fault in provoking or bringing on the difficulty, that you further believe that number one, [appellant] retreated as far as she safely could under the circumstances in a good faith attempt to abandon the fight; and number two, [appellant] made known her desire for peace by word or act; and number three, [appellant] reasonably feared under the circumstances as they appeared to her that she was in imminent danger of bodily harm; and number four, [appellant] used no more force under the circumstances as they appeared to her than was reasonably necessary to protect herself from the perceived harm, that she acted in self-defense and you shall find [appellant] not guilty.

Appellant offered another instruction for self-defense necessity and an instruction for

self-defense without fault.  Lastly, appellant offered the following instruction:

> if you believe that [appellant] reasonably believed under the circumstances, as they appeared to her, that [appellant] was without fault in provoking or bringing on the altercation and that [appellant, Martin, Cotten], or others connected to [appellant] . . . were in danger of being killed or of some great bodily harm, then the shooting by [appellant] was in self-defense . . . and you should find [appellant] not guilty.

The Commonwealth objected to "any instructions that reference[d] the defense of

self-defense . . . [as appellant] ha[d] not brought forth a *prima facie* case of self-defense."

Appellant responded that this was a classic case of self-defense where "on several occasions

[appellant] feared for her life."  Additionally, the Harris brothers made several deadly threats,

took a couple of steps toward appellant, and one of the brothers reached into his pocket while

coming towards her.

The trial court instructed the jury on self-defense as to the shooting of Dorsey Harris, but not as to the killing of Antonio Harris. During closing argument, both the Commonwealth and appellant referred to self-defense with respect to the shooting generally. After closing arguments, the trial court therefore instructed the jury that it may consider self-defense for Dorsey but *not* Antonio. After the jury retired to deliberate, appellant moved for a mistrial based on the trial court's *sua sponte* decision to instruct the jury that it may not consider self-defense with respect to the shooting of Antonio Harris. Appellant argued that she should be entitled to the self-defense instruction as to both Harris brothers as they were "acting in concert." The trial court denied the motion under the authority of Commonwealth v. Sands, 262 Va. 724, 553 S.E.2d 733 (2001), stating the present case was missing "an overt act that would put a person in imminent fear of harm [which would allow a trial c]ourt to give a self-defense instruction."

After deliberating, the jury found appellant guilty of murder in the second degree, aggravated malicious wounding, and two counts of use of a firearm in the commission of a felony. The jury recommended forty-eight years for the four convictions, and the trial court imposed that recommendation at sentencing. This appeal followed.

Analysis

I. The trial court did not err in only giving a self-defense instruction as to Dorsey Harris, nor did the trial court err in giving a follow-up instruction to the jury.[1]

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "Although the Commonwealth prevailed at trial, the appropriate standard of review requires that we view the evidence with respect to the refused instruction in the light most favorable to [appellant]." Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992). In spite of this deference to appellant, "[t]he [trial court] has broad discretion in giving or denying instructions requested." Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (*en banc*) (citations omitted). "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." Id. (quoting Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984)); see also Graham v. Commonwealth, 31 Va. App. 662, 674, 525 S.E.2d 567, 573 (2000). "The trial judge has broad discretion in giving or denying instructions requested." Gaines, 39 Va. App. at 568, 574 S.E.2d at 778 (quoting John L. Costello, Virginia Criminal Law and Procedure § 60.6-8, at 810 (2d ed. 1995)). "[W]hen a principle of law is vital to a defendant in a

---

[1] Appellant concedes that there is no rejected jury instruction in the record for the Court to consider. This is because appellant offered one set of self-defense jury instructions, anticipating that they would apply to the shootings of both Antonio and Dorsey Harris. Once the instructions were offered and argument given, the trial court edited them to specify that they only applied to appellant's shooting of Dorsey Harris. Thus, the "rejected" self-defense instruction as to Antonio Harris was, as understood by all parties, the same language as the self-defense instructions that ultimately only applied to Dorsey Harris. We therefore find that the alleged error was sufficiently preserved and presented to this Court for consideration on the merits.

criminal case; a trial court has an affirmative duty properly to instruct a jury about the matter."

Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991).

> A defendant is entitled to have the jury instructed only on those theories of the case that are supported by [more than a scintilla of] evidence. The weight of the credible evidence that will amount to more than a mere scintilla . . . is a matter to be resolved on a case-by-case basis by assessing the evidence in support of a proposition against the other credible evidence that negates it. If a proffered instruction finds any support in credible evidence, however, its refusal is reversible error.

King v. Commonwealth, 64 Va. App. 580, 587, 770 S.E.2d 214, 218 (2015) (citations omitted).

"Self-defense is an affirmative defense to a charge of murder." Sands, 262 Va. at 729, 553 S.E.2d at 736. The "bare fear" of serious bodily injury, or even death, however well-grounded, will not justify the taking of human life. Stoneman v. Commonwealth, 66 Va. 887, 895 (1874). "There must [also] be some overt act indicative of imminent danger at the time." Vlastaris v. Commonwealth, 164 Va. 647, 652, 178 S.E. 775, 776 (1935). In other words, a defendant "must wait" until some overt act is done or until "the danger becomes imminent." Id. at 652, 178 S.E. at 777 (citation omitted)

We find no error in the trial court's decision to only instruct the jury on self-defense with respect to the shooting of Dorsey and not Antonio Harris. All of the evidence suggested that the only person (other than appellant) who had any kind of weapon on his person, who brandished a weapon, who said anything threatening, or who walked toward appellant with his hand in his pocket, provoking concern that a weapon may be in hand, was Dorsey Harris. The only evidence supporting appellant's contention that Antonio Harris threatened her and caused her to fear for her life was appellant's testimony that Antonio moved toward appellant at the same time as Dorsey, immediately prior to the shooting. However, walking toward someone, in and of itself, is not sufficient to justify a self-defense instruction. No other evidence suggested that Antonio

Harris had threatened appellant verbally or brandished a weapon toward anyone. Because all of the evidence supporting appellant's contention that she feared for her life and believed that she was being approached with a weapon related to Dorsey's, and not Antonio's, words and actions, we agree with the trial court that a self-defense instruction was only appropriate for the shooting of Dorsey Harris.

Further, we find no error with the trial court's decision to provide a clarifying instruction to the jury after closing argument given that both the Commonwealth and appellant addressed self-defense generally with respect to the shooting within their closing statements. The trial court noted that it only instructed the jury on self-defense as to the shooting of Dorsey and indicated that both parties may have confused the jury by providing argument contrary to the instructions of the trial court. As such, the trial court's instruction simply clarified for the jury that it may consider self-defense as to Dorsey but not Antonio. A trial judge has broad discretion when conducting a trial, including when jury instructions are decided upon and read to the jury. See Justus v. Commonwealth, 222 Va. 667, 677, 283 S.E.2d 905, 910 (1981). Given that the trial court's job concerning jury instructions is to ensure that the law is clearly stated to the jury, the court providing clarification, in this case, did not constitute an abuse of discretion. See Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009).

As discussed above, we agree with the trial court's decision not to instruct the jury on self-defense as to Antonio and because closing arguments may have conflicted with the jury's actual instructions, the trial court did not err in ensuring that the jury correctly understood the context in which it could consider appellant's affirmative defense of self-defense.

II.  The trial court did not err by refusing to allow appellant to introduce the entirety of her telephone conversation with Cotten following her arrest.

A.  Evidentiary Issues

Appellant presents two assignments of error challenging the trial court's refusal to allow appellant to (1) question appellant on re-direct examination about the entirety of her telephone conversation with Cotten after parts of it were discussed on cross-examination, and (2) re-open her case and present testimony about the entirety of appellant's telephone conversation to Cotten immediately after her police interview.  We disagree with appellant's arguments and find that the trial court did not abuse its discretion when it refused to allow appellant to present the entirety of the telephone conversation to the jury even though the Commonwealth excerpted two statements from the conversation.

When reviewing the admissibility of evidence, we apply an abuse of discretion standard. Thomas v. Commonwealth, 279 Va. 131, 168, 688 S.E.2d 220, 240 (2010).  When using this standard "we do not substitute our judgment for that of the trial court.  Rather, we consider only whether the record fairly supports the trial court's action."  Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting Beck v. Commonwealth, 253 Va. 373, 385, 484 S.E.2d 898, 906 (1997)).

When an out-of-court statement made by a defendant is offered into evidence by the defendant it is inadmissible hearsay unless it falls under a hearsay exception.  King v. Commonwealth, 18 Va. App. 57, 58, 441 S.E.2d 704, 704 (1994).  If the statement is offered as evidence by the prosecution, the statement is admissible as a party admission.  Id.  In this case, appellant tried to have her entire telephone conversation with Cotten read to the jury, first during her re-direct examination and then again through Detective Russell, who questioned appellant and overheard the conversation.  However, the transcript of the telephone conversation did not

fall within an exception to the hearsay rule. A defendant may introduce his or her own prior consistent statements when the prosecution suggests that the defendant has a motive to falsify, alleges that the defendant's testimony is a recent fabrication, or attempts to impeach the defendant with a prior inconsistent statement. Id. at 59, 441 S.E.2d at 705. Because the Commonwealth did not allege or make any such suggestions, the trial court did not err by prohibiting appellant from reading the entire transcript of the telephone conversation to the jury. Similarly to the trial court in King, the trial court in this case found that while the prosecution asked about specific parts of the telephone conversation on appellant's cross-examination, these actions did not fall under an exception to the hearsay rule. See id. at 60, 441 S.E.2d at 705.

Appellant relies on the case of Jones v. Commonwealth, 50 Va. App. 437, 605 S.E.2d 859 (2007), to support her argument that she should have been allowed to read her entire conversation with Cotten to the jury. However, this case can be distinguished from Jones because in Jones the prosecution used the out-of-court statements to impeach the appellant, opening the door, and thereby allowing appellant to enter the rest of his statements into evidence. See id. at 452, 605 S.E.2d at 866. In this case, the Commonwealth did not use appellant's statements during the telephone conversation with Cotten for impeachment purposes. Thus, appellant was not allowed to enter the entire transcript into evidence as in Jones. See id.

We find that the trial court did not abuse its discretion by prohibiting appellant from presenting the full transcript of her telephone conversation with Cotten to the jury. Thus, the trial court's decision is affirmed.

B.  Harmless Error

Appellant further argues that any error of the trial was not harmless.  Even assuming without deciding that the trial court erred in prohibiting appellant from presenting the entirety of the transcript, this error constituted non-constitutional harmless error.

"In a non-constitutional context, we review a trial court's rulings on whether to admit or exclude evidence under an abuse of discretion standard."  Commonwealth v. Swann, 290 Va. 194, 197, 776 S.E.2d 265, 267 (2015).  "We will not reverse a trial court for evidentiary errors that were harmless to the ultimate result."  Shifflett v. Commonwealth, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015).

The test for non-constitutional harmless error under Code § 8.01-678, as adopted by the Supreme Court of Virginia, provides:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . .  But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand.

Clay v. Commonwealth, 263 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).  The code section "puts a *limitation* on the powers of this court to reverse the judgment of the trial court--a limitation which we must consider on every application for an appeal and on the hearing of every case submitted to our judgment."  Kirby v. Commonwealth, 50 Va. App. 681, 699, 653 S.E.2d 600, 604 (2007) (quoting Walker v. Commonwealth, 144 Va. 648, 652, 131 S.E. 230, 231 (1926)).

On this issue, error, if any, on the part of the trial court was harmless.  The jury heard evidence regarding appellant's statements to police and select statements of the telephone

- 13 -

conversation. These conversations would not have added anything to what the jury already knew and would not have influenced the verdict. If anything, knowledge of the contents of this conversation would have negatively impacted appellant's case because within these conversations appellant asks Cotten to talk to the police and mentions how she only told the police the "minimum" amount of information. It is clear from the record and the evidence presented that appellant had a fair trial on the merits and substantial justice was reached in this case. See Lavinder v. Commonwealth, 12 Va. App. 1003, 1005-06, 407 S.E.2d 910, 911 (1991) (*en banc*).

Based on the standard by which we review non-constitutional harmless error issues, which is even lower than the standard for constitutional harmless error issues, we find that any error in this case was harmless.

Conclusion

We hold that the trial court did not err in failing to instruct the jury on appellant's claim of self-defense as it pertained to the murder of Antonio Harris as there was no evidence to show the need for such instruction. As such, we find that the trial court did not err in issuing a *sua sponte* instruction to the jury that it may only consider the affirmative defense of self-defense for Dorsey, and not Antonio Harris. Further, the trial court did not abuse its discretion in refusing to allow the entirety of the telephone conversation between appellant and Cotten into evidence nor did the trial court err in not allowing appellant to re-open her case to present such evidence. Assuming without deciding that any error occurred, such error was harmless error. Thus, we affirm the findings of the trial court.

Affirmed.