COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, AtLee and Athey
Argued at Lexington, Virginia

HERBERT SNIPES

MEMORANDUM OPINION* BY
v.        Record No. 1525-18-3          JUDGE RICHARD Y. ATLEE, JR.
OCTOBER 8, 2019

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

Eric T. Cronin (Office of the Public Defender, on brief), for
appellant.

Eugene Murphy, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


A jury convicted Herbert Snipes of first-degree murder in violation of Code § 18.2-32

and use of a firearm in the commission of a felony in violation of Code § 18.2-53.1.  Snipes

argues on appeal that the trial court erred in refusing to provide a self-defense instruction to the

jury.  For the following reasons, we affirm the trial court's ruling.

I. BACKGROUND

When reviewing a trial court's refusal to give a proffered jury instruction, we view the

evidence in the light most favorable to the proponent of the instruction, in this case, Snipes.

Commonwealth v. Cary, 271 Va. 87, 90-91 (2006).  So viewed, the evidence is as follows.

Snipes and his neighbor Jerry Wilson ("the victim") had been involved in a long-running

dispute over the boundary line between their two respective properties.  Snipes's dispute with the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

victim had been going on for six or seven years, but the same boundary line dispute dated back to 2005 with Snipes's prior neighbors.

On the morning of July 26, 2017, Snipes and the victim got into an argument, and Snipes called the police. Officer Nicole Jeffries of the Danville Police Department responded to the call. Snipes claimed that his neighbor had been parking on his property and that the city sold his property without his knowledge. Because it was a civil matter, the police were unable to assist. But Officer Jeffries did give Snipes a suggestion on who to talk to for help.

That same day, Snipes took the officer's advice and went downtown to see if he could get help resolving the problem. When he was unable to get the help he wanted, Snipes went to the Mayor's office. No one at the Mayor's office was able to assist him either. Two to three months earlier, Snipes had visited the City Attorney's office to complain about the city having taken his property and given it to his neighbor. At that time, Snipes asked "how much time he would get if he just killed his neighbor."

When Snipes returned home on July 26, the victim stood on the sidewalk taunting him and laughing at him. Snipes later testified that this made him feel threatened, though he did not see a gun or other weapon. Snipes grabbed his rifle from inside his front door. The victim was walking away from Snipes and toward his own house. When the victim saw the gun, he started walking faster toward his house. Snipes shot the victim as the victim opened the front door of his home.

Snipes called the police and told them he had shot somebody. When the police responded to the scene, Snipes directed the officer next door. The responding officer discovered the victim unresponsive on the floor of the dining room, and the victim was later pronounced dead at the hospital. In the victim's home, the police discovered a loaded .22 caliber pistol in a black fanny pack inside the front door and a loaded .380 caliber pistol on the dining room table.

At trial, Snipes testified that he was afraid the victim was going into the house to get a gun in order to shoot Snipes. Snipes explained that the victim had been picking on him and harassing him for years. He described how the victim would sic his two pitbull dogs on Snipes while Snipes was mowing the grass. Once, the victim and three men waited for Snipes outside of his home and the police had to be called to resolve the dispute. Snipes testified that he saw the victim carrying and handling guns on several occasions, and he also described hearing gunshots in the alley outside of his house late at night. He never saw the victim shooting in the alley, but he testified that he knew it was the victim from "common sense."

Before the case was submitted to the jury, Snipes requested a self-defense instruction.[1] The trial court refused the instruction, finding there was no evidence to support it. The jury convicted Snipes of the crimes charged. Snipes now appeals to this Court.

## II. ANALYSIS

The "matter of granting and denying instructions does rest in the sound discretion of the trial court." Cooper v. Commonwealth, 277 Va. 377, 381 (2009). "[A]n instruction is proper only if supported by more than a scintilla of evidence." Commonwealth v. Sands, 262 Va. 724, 729 (2001). But "[i]f the instruction is not applicable to the facts and circumstances of the case, it should not be given." Id. "Thus, it is not error to refuse an instruction when there is no evidence to support it." Id.

The laws governing self-defense are well established within the Commonwealth. By raising self-defense as an affirmative defense to murder, "a 'defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse

---

[1] When Snipes requested the self-defense jury instruction, the trial court asked whether he wanted the "with fault" or "without fault" instruction. Initially, he wanted both, but the trial court stated he could not adopt such inconsistent positions. Snipes then stated he wanted the "no fault" instruction.

that raises a reasonable doubt in the minds of jurors.'" Sands, 262 Va. at 729 (quoting McGhee v. Commonwealth, 219 Va. 560, 562 (1978)).  To establish self-defense, a defendant must show "that he reasonably feared death or serious bodily harm at the hands of his victim" and "that he was in imminent danger of harm."  Hines v. Commonwealth, 292 Va. 674, 679 (2016).

"The 'bare fear' of serious bodily injury, or even death, however well-grounded, will not justify the taking of human life."  Sands, 262 Va. at 729.  "There must [also] be some overt act indicative of imminent danger at the time."  Id. (alteration in original) (quoting Vlastaris v. Commonwealth, 164 Va. 647, 652 (1935)).

> In other words, a defendant "must wait till some overt act is done[,] . . . till the danger becomes imminent."  In the context of a self-defense plea, "imminent danger" is defined as "[a]n immediate, real threat to one's safety . . . ."  Black's Law Dictionary 399 (7th ed. 1999).  "There must be . . . some act menacing present peril . . . [and][t]he act . . . must be of such a character as to afford a reasonable ground for believing there is a design . . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution."

Id. (alterations in original) (citation omitted).

In Sands, a defendant asked for a self-defense instruction after shooting her husband.  Id. at 728.  There was a long history of abuse, and on the day of the killing, the defendant's husband had savagely and repeatedly beaten her throughout the day.  Id. at 727-28.  Despite believing that the defendant had a reasonable fear that her husband would kill her, the Supreme Court held that the record did not "reveal any overt act by her husband that presented an imminent danger at the time of the shooting."  Id. at 730.  Sufficient time had elapsed between the last beating and the killing for the defendant to call her sister-in-law, for her sister-in-law to arrive, for the defendant to assess her injuries, and for defendant to retrieve a gun and walk into the bedroom where husband was watching television.  Id.  Thus, the instruction was not proper.

Here, even if the trial court credited all of Snipes's testimony, the evidence at best demonstrates only that he had a generalized fear of the victim. But such generalized fear of the victim is not sufficient to warrant a self-defense instruction. Like the record in Sands, the record before us fails to demonstrate even a scintilla of evidence that there was an overt act by the victim that presented an imminent danger to Snipes at the time of the shooting. By Snipes's own testimony, the victim was walking towards his house when Snipes pulled out his gun, and when the victim saw the weapon he started walking faster into his own house. Thus, at the time of the shooting, the evidence demonstrates that the victim was moving away from Snipes. Further, Snipes was in a relative position of safety and had the immediate ability to retreat into his home had he felt threatened.

Snipes argues that the victim's retreat to his home is a sufficient overt act because the police located loaded guns near the doorway in the victim's home and he thought the victim was going to get a gun. But Snipes did not know at the time of the shooting that there were loaded weapons in the home. And simply moving towards a location where there may be weapons is not a sufficient overt act to justify homicide. See Yarborough v. Commonwealth, 217 Va. 971, 978 (1977) (holding that the mere reaching towards a boot where defendant knew victim kept a knife was not such an overt act as would excuse homicide). "The requirement of an overt act indicative of imminent danger ensures that the most extreme recourse, the killing of another human being, will be used only in situations of necessity." Sands, 262 Va. at 731.

Because there is *no* evidence of an overt act in the record, the self-defense instruction was not appropriate. Therefore, the trial court did not abuse its discretion in denying the proffered instruction.

## III. Conclusion

For these reasons, we affirm the decision of the trial court.

Affirmed.