COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, AtLee and Raphael
Argued at Lexington, Virginia


MICHAEL RANDOLPH VAUGHAN

MEMORANDUM OPINION* BY
v.        Record No. 1440-20-3        JUDGE RICHARD Y. ATLEE, JR.
FEBRUARY 1, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
James J. Reynolds, Judge

Mark T. Williams (Williams & Light, on brief), for appellant.

Craig W. Stallard, Senior Assistant Attorney General (Mark R.
Herring, [1] Attorney General, on brief), for appellee.


Following a bench trial, the circuit court convicted appellant Michael Randolph Vaughan

of attempted first-degree murder, aggravated malicious wounding, shooting from a vehicle, and

use of a firearm in the commission of a felony.  On appeal, he argues the circuit court erred by

(1) "denying [him] from impeaching [a prosecution] witness"; (2) finding sufficient evidence of

intent to kill to support a conviction of attempted murder; and (3) finding Vaughan acted with

malice, rather than in self-defense, or without malice.  For the following reasons, we disagree

and affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

## I. BACKGROUND

"On appeal of criminal convictions, we view the facts in the light most favorable to the Commonwealth, and [we] draw all reasonable inferences from those facts." *Payne v. Commonwealth*, 65 Va. App. 194, 198 (2015).

On August 12, 2019, Vaughan and the victim, Eric Clay, were drinking together at Vaughan's house. Vaughan and Clay had known each other for at least ten years. They decided to visit Clay's cousin, Jasmine Jamerson, who lived twelve to fifteen miles from Vaughan. Clay and Vaughan remained at Jamerson's for about an hour to an hour-and-a-half, talking to Jamerson and her husband and playing with their two daughters.

Clay testified that he had a couple "swallows" of bourbon, meaning full mouthfuls of liquor from the bottle, at Vaughan's house before they left. He testified that he did not drink at Jamerson's. Jamerson testified that Vaughan was drinking "some" at her house and that Clay "maybe took a swallow," but "[i]t wasn't no heavy drinking." She said Vaughan was "a little tipsy" but that the visit was pleasant, with no fighting and everyone "laughing and carrying on just like any other time."

After leaving Jamerson's, Clay took Vaughan to look at a fishing spot about fifty yards from Jamerson's house. They then headed back towards Vaughan's house. On the drive, Clay testified that Vaughan asked him to slow down and that he responded that he was only "running like forty or forty-five" miles per hour. He continued "the next thing I know I was, I see like a flash on the side of my head that, and like a loud boom and I, I really don't remember anything after that." At no point did Vaughan ask Clay to pull over, stop driving, or attempt to take control of the vehicle.

Clay woke up in the hospital. He had a bullet wound below his right temple and had lost vision in his left eye. As a result, he can no longer obtain a Commercial Driver's License for

work. Bullet fragments remain in his skull due to the risks of removing them. Medical records from the hospital indicated that Clay had a 0.13 blood alcohol content when he was admitted, as well as traces of benzodiazepine and cannabinoid in his system. Clay testified that he had taken Valium and CBD to explain the latter two results.[2]

At the close of the Commonwealth's case-in-chief, Vaughan moved to strike the evidence, arguing in part that the evidence failed to establish the requisite intent. The circuit court denied the motion, saying "[i]f a gun is pointed at a person's head, at close range and fired into the side of their head, there is not a whole lot of leap that you need to make in terms of what the intent was at the time that gun was fired." After the defense presented its witnesses, Vaughan renewed the motion to strike, which the circuit court denied. Vaughan received a ten-year sentence for attempted first-degree murder, which was suspended in full; a twenty-year sentence for aggravated malicious wounding, with eight years suspended; a seven-year sentence for shooting from a vehicle, which was suspended in full; and a three-year mandatory minimum sentence for the use of a firearm in the commission of a felony, for a total active sentence of fifteen years in prison. This appeal followed.

## II. ANALYSIS

Vaughan first argues that the circuit court ought to have permitted him to cross-examine Clay about a 2014 incident where Clay weaved while driving under the influence. He also raises various challenges to the sufficiency of the evidence of intent, arguing that the evidence failed to show he had specific intent to support the attempted murder charge and that his claim of self-defense negated any evidence of malice.

---

[2] An expert for the defense testified that cannabinoid would only have shown up in testing if an individual took something containing THC. CBD, the non-intoxicating compound derived from cannabis, does not show up on this test.

- 3 -

A. *Impeachment Evidence*

We review a circuit court's decision to exclude impeachment evidence, like other evidentiary rulings, for an abuse of discretion. *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019). Under this "deferential standard[,] . . . [o]nly in those cases [in which] 'reasonable jurists could not differ has an abuse of discretion [supporting a reversal] occurred.'" *Id.* (fourth and fifth alterations in original) (quoting *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017)).

Vaughan argues that the circuit court erred when it did not permit him to cross-examine Clay about an incident from 2014 where Clay was weaving while driving under the influence. He alleges that such evidence was permissible and probative as it "contradicted Clay's claim that he was not weaving on the highway as asserted by [Vaughan]." He also argues that any past acts of weaving are "probative on the issue of credibility." This weaving was relevant, he claims, because it supported his claim of self-defense, as he purportedly shot Clay out of fear for his life based upon Clay's reckless driving.

"Except as provided in Rule 2:413 or by statute, evidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person in order to show that the person acted in conformity therewith." Va. R. Evid. 2:404(b). This rule exists to exclude improper propensity evidence, which is precisely what Vaughan sought to introduce here, as he was attempting to establish that Clay weaved on August 12, 2019, because he purportedly also weaved in 2014.

Vaughan argues that this was admissible impeachment evidence under Virginia Rule of Evidence 2:607(a)(vii) and (viii). Under Virginia's Rules of Evidence,

> the credibility of a witness may be impeached by any party other
> than the one calling the witness, with any proof that is relevant to

the witness's credibility. Impeachment may be undertaken, among other means, by:

. . . .

(vii) contradiction by other evidence; and

(viii) any other evidence which is probative on the issue of credibility because of a logical tendency to convince the trier of fact that the witness's perception, memory, or narration is defective or impaired, or that the sincerity or veracity of the witness is questionable.

Va. R. Evid. 2:607(a).

Vaughan's argument fails under both subparts of the rule. First, considering Rule 2:607(a)(vii), Clay never denied that alcohol affected his driving, or that he may weave when intoxicated. During cross-examination, the following exchange occurred:

[Defense counsel:] Now let me ask you this, you, when you drink it affects your driving, does it not?

[Clay:] It does.

[Defense counsel:] It does?

[Clay:] Yeah.

[Defense counsel:] You tend to, when you, you drive a car, and you had been drinking, you tend to weave, do you not?

[Clay:] Depending on how –

[Commonwealth's attorney:] I would –

[Clay:] -- much –

[Commonwealth's attorney:] -- object to tend to.

[Defense counsel:] Well, let me rephrase it.

[Defense counsel:] You do weave back and forth in your car.

[Clay:] I guess.

[Defense counsel:] What do you mean, you guess?

[Clay:] I guess.

[Defense counsel:] Do you not?

[Clay:] I don't know. I, I mean –

[Defense counsel:] You, you were, you, you've had problems driving drinking and weaving all over the road in the past, have you not?

At this point, the circuit court heard and sustained the Commonwealth attorney's objection to this line of questioning for attempting to introduce improper propensity evidence, as well as being irrelevant and inadmissible hearsay. This was not error, as this was not admissible as impeachment evidence. Clay did not deny weaving while driving, or that alcohol could affect his driving; therefore, there was no contradiction, as required by Rule 2:607(a)(vii), for Vaughan to correct with evidence of prior acts.

Vaughan also argues "it was appropriate impeachment under Rule 2:607(a)(viii), because past acts of weaving while under the influence was probative on the issue of credibility because it had the logical tendency to show that Clay's perception, memory or narration was defective or impaired." This argument makes little, if any, sense. An isolated incident of weaving while driving, that occurred half-a-decade before the events at issue, has no relevance to whether Clay's "perception, memory, or narration [wa]s defective or impaired," or that there was reason to question his "sincerity or veracity." Va. R. Evid. 2:607(a)(viii).[3] Accordingly, the circuit court did not err in refusing to admit Vaughan's "impeachment" evidence under either Rule 2:607(a)(vii) or (viii).

---

[3] Moreover, any error would have been harmless. The evidence established that Clay had alcohol, cannabis, and benzodiazepine in his system, permitting the reasonable inference that he was driving while impaired. That, however, does not mean Clay was driving erratically.

- 6 -

B. *Evidence of Intent*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is "plainly wrong or without evidence to support it."'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)).

"Determining the credibility of witnesses . . . is within the exclusive province of the [fact-finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). The reasonableness of a defendant's alternative hypothesis of innocence is determined by the fact-finder. *See Gerald v. Commonwealth*, 295 Va. 469, 482 n.8 (2018) ("[T]he fact[-]finder determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." (first alteration in original) (quoting *Moseley v. Commonwealth*, 293 Va. 455, 464 (2017))). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Case v. Commonwealth*, 63 Va. App. 14, 23 (2014) (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)). Ultimately, the question for our Court is "whether any reasonable [fact-finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt." *Id.* (second and third alterations in original) (quoting *Emerson*, 43 Va. App. at 277).

1. Specific Intent to Kill

"An attempt to commit a crime is composed of the intent to commit it and a direct but ineffectual act done towards its commission." *Coles v. Commonwealth*, 270 Va. 585, 589

(2005). "Intent is the purpose formed in a person's mind, which may be shown by circumstantial evidence including the person's conduct." *Id*. at 590. "[A] person must have the specific intent to kill in order to be guilty of an attempt to commit murder." *Id*. Finally, "in criminal attempt cases, 'the fact[-]finder is often allowed broad latitude in determining the specific intent of the actor.'" *Siquina v. Commonwealth*, 28 Va. App. 694, 700 (1998) (quoting *Fortune v. Commonwealth*, 14 Va. App. 225, 229 (1992)).

Vaughan's theory of innocence is that he shot Clay because he feared for his life based upon Clay's driving. While use of a firearm, by itself, may not be adequate to show specific intent to kill, in this instance, Vaughan aimed the firearm at Clay's head and fired at point-blank range. It is reasonable to "infer that every person intends the natural and probable consequences of his or her acts." *Thomas v. Commonwealth*, 279 Va. 131, 166 (2010) (quoting *Schmitt v. Commonwealth*, 262 Va. 127, 145 (2001)). Furthermore, "evidence that a weapon was placed against a victim's head when the fatal shot was fired . . . is sufficient alone to support a finding that 'the shot was fired deliberately and with premeditation.'" *Stewart v. Commonwealth*, 245 Va. 222, 240 (1993) (quoting *Townes v. Commonwealth*, 234 Va. 307, 335 (1987)). The same is true when, as here, a defendant fires a shot into a victim's head "from a distance of six inches or less." *Id*. at 241.

As the circuit court held, "what happened is as . . . illustrative of the intent as if [Vaughan] had written a letter in advance. You put a gun to a man's head and fire . . . the gun into his head." It therefore concluded, "based upon the evidence as a whole, that at the time of the shot the defendant, Mr. Vaughan, had adopted a specific intent to kill." The circuit court did not err, based on reasonable inferences from the evidence before it, in reaching this conclusion.

## 2. Malice and Self-Defense

"Implied malice may be inferred from 'conduct likely to cause death or great bodily harm, wil[l]fully or purposefully undertaken.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)). A fact-finder may "infer that every person intends the natural and probable consequences of his or her acts." *Thomas*, 279 Va. at 166. "It necessarily follows that malice may be 'inferred from the deliberate use of a deadly weapon.'" *Tizon*, 60 Va. App. at 11 (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)). There was no evidence that Clay was armed. *See id.* (affirming conviction where victim was unarmed, and defendant shot him twice at point-blank range).

An individual acting in self-defense, by definition, does not act maliciously. Yet "[t]he 'bare fear' of serious bodily injury, or even death, however well-grounded, will not justify the taking of human life." *Commonwealth v. Cary*, 271 Va. 87, 99 (2006) (quoting *Stoneman v. Commonwealth*, 66 Va. 887, 900 (1874)). "There must [also] be some overt act indicative of imminent danger at the time." *Id.* (alteration in original) (quoting *Vlastaris v. Commonwealth*, 164 Va. 647, 652 (1935)). "In other words, a defendant 'must wait till some overt act is done[,] . . . till the danger becomes imminent.'" *Id.* (alterations in original) (quoting *Vlastaris*, 164 Va. at 652). Here, the circuit court reasonably concluded that Clay had taken no action that would have placed Vaughan in reasonable fear of imminent danger, and thus his actions were not taken in self-defense.

While the use of a firearm, by itself, may be insufficient to prove intent to kill or maliciously wound, a reasonable fact-finder could infer malice from Vaughan's deliberate act using a deadly weapon when he fired a weapon directly at Clay's head, at point-blank range. *See, e.g.*, *Stewart*, 245 Va. at 240; *Townes*, 234 Va. at 335. Given the permissible inference that "every person intends the natural and probable consequences of his or her acts," *Thomas*, 279

Va. at 166, a reasonable fact-finder would logically infer that pointing a firearm at someone's head and firing would amount to "conduct likely to cause death or great bodily harm, wil[l]fully or purposefully undertaken," *Tizon*, 60 Va. App. at 11 (quoting *Canipe*, 25 Va. App. at 642). The fact-finder was also entitled to disbelieve Vaughan's theory of innocence — that he shot Clay in self-defense — as an "unreasonable" hypothesis of innocence. *Gerald*, 295 Va. at 482 n.8. As such, there was no error in finding the evidence of intent sufficient to support Vaughan's convictions.

### III. CONCLUSION

The circuit court did not err in excluding Vaughan's proffered impeachment evidence, nor in finding that he possessed the requisite intent to be found guilty of attempted murder and aggravated malicious wounding. Accordingly, we affirm Vaughan's convictions.

*Affirmed.*